## 50421. DUNLAP v. CITIZENS & SOUTHERN DeKALB BANK.

CLARK, Judge.

The instant appeal is from a verdict and judgment thereon rendered for the Citizens and Southern DeKalb Bank as plaintiff upon a written contract executed by defendant L. W. Dunlap. Although the complaint describes the suit as being based upon "a suretyship agreement" (R. 3) the attached document is captioned as "Guaranty" (R. 6). Throughout the document the word "guaranty" is used in all references to the written agreement.

As our decision is based upon the provisions of the contract rather than nomenclature, we quote the pertinent portions of the contract upon which the action is based. These provide as follows: "For value received, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to Merry Dunlap (hereinafter called the 'Debtor') by Citizens and Southern DeKalb Bank . . . the undersigned [defendant] hereby unconditionally guarantees the full and prompt payment when due . . . of all obligations of the Debtor to the Bank, however and whenever incurred. . . The right of recovery against the undersigned is, however, limited to Twenty six hundred eighty three Dollars . . . of the principal amount of the

Liabilities plus the interest on such amount and plus the Expenses as applicable thereto and as applicable to this guaranty. . .

"This guaranty shall be continuing, absolute and unconditional and shall remain in full force and effect as to the undersigned . . . only as follows: Any of the undersigned . . . may give written notice to the Bank of discontinuance of this guaranty as to the undersigned by whom or on whose behalf such notice is given . . .

"The Bank may, from time to time, without notice to the undersigned . . . (b) retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned, with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period), alter or exchange any of the Liabilities (d) release or compromise any liability of any of the undersigned hereunder or any liability of any other party or parties primarily or secondarily liable on any of the Liabilities . . . (f) resort to the undersigned . . . for payment of any of the Liabilities, whether or not the Bank shall have resorted to any property securing any of the Liabilities . . . or shall have proceeded against any other of the undersigned or any other party primarily or secondarily liable on any of the Liabilities . . .

"The creation or existence from time to time of Liabilities in excess of the amount to which the right of recovery under this guaranty is limited . . . is hereby authorized, without notice to the undersigned . . . and shall in no way affect or impair this guaranty."

The instrument outlined above was executed by defendant on November 28, 1972. That same day, defendant's daughter signed a "Consumer Motor Vehicle Note — Security Agreement" which was payable to the Bank in 36 monthly instalments and totaled $2,683 (the amount to which the right of recovery against defendant is limited). The daughter's signature appears upon this note as "Merry Dunlap."

On November 13, 1973, a second note, payable to the Bank, was executed by defendant's daughter, as "Mrs. Merry Del Nero (Merry Dunlap)," and her newly-wed husband, Ron Del Nero. The amount of this second note included the balance on the daughter's "Consumer Motor

Vehicle Note — Security Agreement" (which was marked "paid by renewal") and advanced an additional $350 to the Del Neros. It provided that the parties executing the instrument, the Del Neros, shall be jointly and severally liable thereon.

Thereafter, the Del Neros defaulted upon the second note and this action was commenced. The jury returned a verdict for the full amount sued for including attorney fees. This appeal is from the judgment rendered on that verdict. *Held:*

1. "The code provides that a contract of suretyship is where one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty, in that the consideration of the latter is a benefit flowing to the guarantor. Civil Code (1910), § 3538 [Code § 103-101]. But the test laid down in the code, to distinguish a contract of suretyship from one of guaranty, is not decisive. As with other contracts, the whole matter is governed by the intention of the parties." *Baggs v. Funderburke,* 11 Ga. App. 173, 174 (74 SE 937); *Kennedy v. Thruway Service City, Inc.,* 133 Ga. App. 858 (212 SE2d 492).

2. Whether the contract is one of suretyship or guaranty is not determinative of the outcome in this case. "[U]pon analysis, there usually is no reason to draw the distinction between a contract of guaranty and a contract of suretyship. The problem before the court can generally be solved by interpreting and construing the promise made by the promisor, rather than by the concern whether that promise should be labeled as a 'guaranty' or a 'suretyship.' " 38 AmJur2d 1010, 1011, Guaranty, § 14.

3. "A contract of suretyship is one of strict law, and the surety's liability will not be extended by implication or interpretation. Code § 103-103. Any novation without the consent of the surety, or increase in risk, discharges the surety. Code §§ 103-202, 103-203." *Palmes v. Southern Mechanical Co.,* 117 Ga. App. 672, 673 (161 SE2d 413). The same rule of law applies to a guarantor. *Evans v. American Nat. Bank &c. Co.,* 116 Ga. App. 468 (157 SE2d 816).

4. Defendant argues the bank increased his risk by

entering into the second note with his daughter *and* her husband; that he was thereby discharged from his contractual obligations, and entitled to judgment as a matter of law. Assuming, but not deciding, defendant's risk was increased by the retention of his son-in-law as a primary obligor on the second note, we nevertheless cannot accept this argument in view of the agreement signed by defendant.

A surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge. See *Twisdale v. Georgia R. Bank &c. Co.,* 129 Ga. App. 18 (198 SE2d 396); *Reeves v. Hunnicutt,* 119 Ga. App. 806 (168 SE2d 663). And see Simpson, Handbook on the Law of Suretyship, § 72, p. 343 (1950), wherein the author notes, "Whenever the surety expressly consents in advance to the change that is subsequently made, it is clear that he should not be discharged. It may then correctly be said that he promises with reference to the new agreement, and is as much a party to it as if he had assented to it at the time it was made." This is precisely the course defendant pursued.

Under the unambiguous language of the "continuing" contract, defendant agreed that the Bank, without notifying the defendant, might alter, renew, or extend his daughter's present or future liabilities *and* obtain the primary liability of a third party with regard to those liabilities. Thus, defendant consented in advance to the retention of a primary obligor on any bank agreement through which his daughter became indebted.

5. Relying upon *Peara v. Atlanta Newspapers,* 120 Ga. App. 163 (169 SE2d 670), defendant argues that in strictly construing the contract the addition of Ron Del Nero as a debtor was unauthorized since he only guaranteed the debts of his daughter. This argument ignores two points: First, defendant's daughter is indebted, jointly and *severally,* to the bank upon the second note. Second, as noted above, the unambiguous language of the contract permits the bank to "retain or obtain" the primary liability of another party.

6. The failure to comply with the provisions of Code Ann. § 20-506 (c) renders attorney fees, for which provision is made in a note or contract, uncollectible.

*Walton v. Johnson,* 213 Ga. 108, 111 (97 SE2d 310). That section provides, in part: "The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the *maker, indorser or party sought to be held on said obligation* that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees." (Emphasis supplied.)

In the case at bar the bank attempted to comply with the mandate of Code Ann. § 20-506 by mailing the requisite notice to defendant's attorney, not defendant himself. This resulted from the attorney having written the bank in behalf of the defendant and requested "that any further correspondence regarding this matter be directed" to him. The trial court instructed the jury that notice to defendant's attorney was sufficient to meet the codal requirement of notice to defendant. Error is assigned upon this charge.

Notice to an obligor's authorized attorney is the equivalent of notice to the obligor under Code Ann. § 20-506. See *Brown v. Travelers Indem. Co.,* 124 Ga. App. 542 (184 SE2d 504), wherein notice to an employee's attorney of a subrogation claim was deemed sufficient to meet the requirement of Code Ann. § 114-403[1] that such notice be given to the employee. The rule imputing an agent's knowledge to his principal is applicable to the attorney-client relationship. *Bean v. Barron,* 176 Ga. 285 (168 SE 259). The charge was not erroneous.

7. The remaining enumerations assign error upon other portions of the trial court's instructions to the jury. Upon careful consideration, we find these enumerations to be without merit.

*Judgment affirmed. Pannell, P. J., and Quillian, J., concur.*

ARGUED MARCH 11, 1975 — DECIDED MAY 9, 1975 — REHEARING DENIED MAY 28, 1975.

---

[1]This section was repealed by Ga. L. 1972, p. 3.

*Charles E. Walker, George H. Connell, Jr.,* for appellant.

*Arthur Gregory, James W. Culbreath,* for appellee.