67652. FORD MOTOR CREDIT COMPANY v. SULLIVAN.

CARLEY, Judge.

In 1979, ESCO Construction and Development Company (ESCO) entered into a written agreement for the lease of a Ford pick-up truck. The lease was then assigned to appellant-plaintiff Ford Motor Credit Company. The written lease contained the following provision, denominated a "GUARANTY": "For valuable consideration the Guarantor signing as such overleaf does hereby guaranty full performance by the Lessee [ESCO] of all of the Lessee's obligations set forth in the attached lease promptly in accordance with the terms thereof and covenants upon default of payment by the Lessee of any sums coming due thereunder to pay upon demand the full amount remaining unpaid thereunder. The liability of the Guarantor shall not be affected by any settlement, extension, variation of terms of the Lease or by the discharge or release of the obligations of the Lessee or any other person by operation of law or otherwise. Notices of acceptance hereof, of non-payment and non-performance and demand for performance and payment are expressly waived." Appellee-defendant signed this "guaranty" provision of the ESCO lease.

When ESCO defaulted on the payments due under the lease, ap-

pellant filed suit against appellee on his "GUARANTY" agreement. The case proceeded to trial before a jury where, at the close of appellant's evidence, appellee moved for a directed verdict. Appellee's motion was predicated upon the absence of any evidence that ESCO, who was the primary debtor on the lease, was insolvent or would be unable to pay a judgment which might be rendered against it. " 'Ordinarily, a guarantor can not be sued to judgment on a contract of guaranty in the absence of a prior judgment against the principal and a nulla bona return, unless it is alleged and proved that the principal debtor is insolvent or that he can not be made to respond to a judgment that may be obtained against him by the plaintiff.' [Cit.]" *Erbelding v. Noland Co.*, 83 Ga. App. 464, 467 (64 SE2d 218) (1951). The trial court granted appellee's motion for directed verdict and appellant appeals.

1. Appellant first asserts that the instant case is controlled by OCGA § 10-7-1, which provides in part: "There shall be no distinction between contracts of suretyship and guaranty." This statute repealing the former statutory distinction between contracts of suretyship and those of guaranty did not become effective until July 1, 1981. See Ga. L. 1981, pp. 870, 871. " 'A repealing act will not be given a retroactive operation so as to divest previously acquired rights or to impair the obligation of a contract previously made by virtue of and pending the existence of such law.' [Cit.]" *Spengler v. Employers Commercial Union Ins. Co.*, 131 Ga. App. 443, 453 (206 SE2d 693) (1974). Accordingly, to the extent that appellee's rights and obligations were established under the 1979 contract in issue, enactment of OCGA § 10-7-1 would have no effect thereon. See generally *Municipal & Indus. Pipe Service v. Walter E. Heller & Co.*, 163 Ga. App. 677 (296 SE2d 68) (1982). Appellee's rights and obligations under the "GUARANTY" contract must be determined under the law as it existed in 1979 when they were created.

2. Appellant next asserts that even under the law as it existed in 1979, appellee derives no benefit from any distinction between a guarantor and a surety. " 'Whatever may have been the difference, if any, between "guaranty" and "surety" seems to have been fused . . ., at least for purposes of the Uniform Commercial Code by the adoption of the Code which provides that "surety" includes "guarantor." [OCGA § 11-1-201 (40)].' [Cit.]" *Mitchell v. Ringson*, 169 Ga. App. 88, 89 (311 SE2d 516) (1983). Thus, under the Uniform Commercial Code, " '[p]ayment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party" and "[w]ords of guaranty which do not otherwise specify guarantee payment." OCGA § 11-3-416 (1) and (3). However, the provisions of the Uniform Commercial Code have

no application in the instant case. By its very terms, OCGA § 11-3-416 applies to an "instrument," which is further defined as a "negotiable instrument." OCGA § 11-3-102 (e). The lease which is the subject of the instant appeal is not a negotiable instrument within the meaning of OCGA § 11-3-104. The "GUARANTY" here was of a lease and, as such, the former general law of guaranty and suretyship, rather than the Uniform Commercial Code, is the controlling authority. Cf. *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333 (287 SE2d 61) (1981). Compare *Mitchell v. Ringson*, supra.

3. We turn to resolution of the issue presented in the instant appeal, to wit, whether under the former law, the insolvency or inability of ESCO as the principal obligor to pay a judgment was a condition precedent to appellee's liability on the "GUARANTY" agreement.

"That the parties denominated the promise a guarantee did not effect its real nature. It is the substance and not the nomenclature of the agreement that determines its character. [Cits.]" *Moate v. H. L. Green Co.*, 95 Ga. App. 493, 504 (98 SE2d 185) (1957). "Where the liability of the promisor is fixed by the mere default of the principal, it is an absolute guarantee; but if the promisor's liability depends upon any other event than the non-performance of the principal, it is a conditional guaranty. [Cit.]" *Williams Valve Co. v. Amorous*, 19 Ga. App. 155 (3) (91 SE 240) (1916). "A guaranty of payment, the unconditional or absolute guaranty, is substantially the same as a suretyship obligation. The only pre-condition to the guarantor's liability is that the principal obligor has not paid the debt when it fell due." 13 EGL, Guaranty & Suretyship, § 6 (1979 rev.).

Under the terms of the agreement in the instant case, appellee's covenant "to pay *upon demand* the full amount remaining unpaid" under the lease was conditioned only "upon *default of payment*" by ESCO. (Emphasis supplied.) Thus, the language of the instant agreement evidences an unconditional or absolute guaranty, in that appellee's liability thereon was triggered solely by the default of payment by the principal obligor. "The [appellee] guaranteed not that [ESCO] could pay at maturity, but that [he] would pay; and hence [ESCO's] solvency or insolvency was immaterial. The rule requiring that the principal debtor should be sued to insolvency or shown to be insolvent, before the guarantor can be held liable, does not apply to an undertaking of the character involved in the present case." *Penn Tobacco Co. v. Leman & Co.*, 109 Ga. 428, 430 (34 SE 679) (1899). See also *Amos v. Continental Trust Co.*, 22 Ga. App. 348 (95 SE 1025) (1918). "Further evidence of its nature as a suretyship is the waiver of presentment, protest and notice of non-payment of any note or other evidence of indebtedness accepted by the promisee from the principal. This waiver is an indication of the assumption of the primary, rather than the mere secondary, obligation to pay the debt. The mak-

ers of the instrument being sureties and not guarantors, it was unnecessary that the plaintiff should allege that the principal debtor . . . was unable to perform. [Cit.]" *Fagelson v. Pfister Aluminum Corp.*, 109 Ga. App. 663, 666 (137 SE2d 313) (1964).

Cases which were relied upon by appellee in making his motion for directed verdict and by the trial court in granting it relate to the guaranty of collection, which is the traditional warranty of the solvency of the principal obligor. See 13 EGL, Guaranty & Suretyship, §§ 4, 6 (1979 rev.). Those cases are inapplicable in the instant case. "Where as here the liability of the guarantors depends upon the failure of the original debtor to pay the debt at maturity and not merely on the insolvency of the original debtor, it is not necessary that such debtor be sued to judgment before a suit may be initiated against the guarantors. [Cit.]" *Ebner v. Gulf Oil Corp.*, 99 Ga. App. 586, 587 (2) (109 SE2d 81) (1959). The trial court erred in granting appellee's motion for directed verdict.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED APRIL 24, 1984.

*Daniel F. Bridgers*, for appellant.
*William G. Quinn III*, for appellee.