### 71503. GRIFFIN v. GEORGIA-PACIFIC CORPORATION.
(341 SE2d 499)

CARLEY, Judge.

Basing its claim on a document denominated a contract of "Guaranty" of the accounts of a corporate principal and of "its subsidiary or related companies," appellee-plaintiff filed suit against appellant-defendant. Appellant's answer denied the material allegations of the complaint and raised several affirmative defenses. During subsequent discovery, appellant acknowledged that he had signed the relevant documents. Appellant appeals from the denial of his motion for summary judgment and from the grant of summary judgment in favor of appellee.

1. Appellant contends that his affirmative defense of failure of consideration was viable for the reason that he received no personal benefit from the "Guaranty." Under current law, the mere lack of any personal consideration flowing directly to appellant would, standing alone, constitute no legal defense to his liability on the "Guaranty." Existing OCGA § 10-7-1 provides: "The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety *or* in consideration of credit or indulgence or other benefit given to his princi-

pal, the principal in either instance remaining bound therefor. . . . There shall be *no distinction* between contracts of suretyship and guaranty." (Emphasis supplied.) However, the underlying document upon which appellant's liability is predicated was signed by him in June of 1974, prior to the effective date of existing OCGA § 10-7-1. Accordingly, appellant's "rights and obligations under the . . . contract must be determined under the law as it existed in 197[4] when they were created." *Ford Motor Credit Co. v. Sullivan,* 170 Ga. App. 718, 719 (318 SE2d 188) (1984). Under that former law, there was a distinction between a contract of guaranty and one of suretyship and that distinction was based upon the element of consideration. "A guaranty, as distinguished from a contract of suretyship, . . . require[d] consideration as a benefit flowing to the guarantor. [Cit.]" *Friedland v. C&S South DeKalb Bank,* 135 Ga. App. 591, 592 (1) (218 SE2d 302) (1975). It is this former distinction based upon consideration that appellant invokes defensively.

Notwithstanding its denomination as a "Guaranty," it would appear from the actual language of the instant contract that it is one of suretyship. See generally *Fagelson v. Pfister Aluminum Corp.,* 109 Ga. App. 663 (1) (137 SE2d 313) (1964). That being the case, "[i]t is not necessary, in order to bind [appellant as] a surety, that there should be a consideration to him individually for the suretyship. It is sufficient if there be a valid consideration out of which the suretyship grew. [Cit.]" *Walls v. Muscogee Bank &c. Co.,* 44 Ga. App. 361, 362-363 (161 SE 663) (1931).

Moreover, even under the former law, in circumstances "where one ha[d] guaranteed payment for goods *before* their delivery, and on the faith of such guaranty, a sale and delivery [was] thereafter made to the principal . . . . the agreement [was] construed and upheld as a contract of guaranty, although no benefit flowing to the guarantor [was] apparent, unless it be under the general presumption that some benefit inure[d] to him on account of credit extended to his principal. [Cit.]' [Cit.]" (Emphasis supplied.) *Brilliant Coal Co. v. Gandy,* 51 Ga. App. 264, 267 (180 SE 379) (1935). See also *Whitley v. Powell,* 47 Ga. App. 105, 106 (2) (169 SE 766) (1933). Just such circumstances exist in the instant case. Appellant admitted in his deposition that he had signed the agreement because it was the "only way" to induce appellee into initiating a business relationship with the corporate principal.

Accordingly, even under the provisions of the former law, whether the underlying agreement signed by appellant is held to be one of suretyship or a guaranty is immaterial to his liability. Under either construction, the asserted absence of any consideration to appellant *personally* would afford him no defense to its enforcement by appellee.

2. Appellant further asserts that his statute of limitation defense was good. The underlying "Guaranty" was not under seal and, as noted, was signed by appellant in June of 1974. The instant suit was filed in December of 1983. "In interpreting the application of [OCGA § 9-3-24] to surety agreements, which we construe the 'guaranty' agreement in this case to be in substance, this court has stated: 'The right of action upon an unsealed contract of surety is barred by the statute of limitation upon the expiration of six years after *the date of the maturity of the obligation*, not six years after the date of the execution of the agreement, since no right of action accrues until the maturity date of the obligation.' [Cit.] Since . . . the *accounts* giving rise to liability all accrued [within six years prior to December 1983], the action on the guaranty agreement is not barred by the applicable statute of limitation." (Emphasis supplied.) *Chatham v. Ga.-Pacific Corp.*, 163 Ga. App. 525, 526 (295 SE2d 226) (1982). Summary judgment was correctly granted as against appellant's statute of limitation defense.

3. In support of its motion, appellee filed an affidavit to which were attached relevant and admissible business records, including the accounts and invoices for the goods. Appellant filed nothing in specific opposition to appellee's motion. He did, however, file an affidavit in support of his own motion. Therein, appellant merely stated that "[a]ll products sold by [appellee] went to [the corporate principal]" and that he "personally received no products from [appellee] and [had] no personal knowledge of whether any products were received . . . ." On this evidence, appellant contends that genuine issues of material fact remain with regard to whether the items listed on the corporate principal's account were in fact delivered to and received by it.

Appellee's evidence was sufficient to shift the burden to appellant of showing that a genuine issue of fact remained. See generally *Wickes Lumber v. Energy Efficient Homes*, 157 Ga. App. 303 (1) (277 SE2d 298) (1981); *Clark v. Assur. Co. of America*, 156 Ga. App. 526 (2) (275 SE2d 111) (1980). "An invoice is evidence of goods sold; moreover, it is evidence of goods delivered. [Cit.]" *Thomasson v. Pineco, Inc.*, 173 Ga. App. 794, 796 (328 SE2d 410) (1985). That appellant, himself the president of the corporate principal, had no "personal knowledge" that the products were delivered is certainly not relevant rebuttal evidence. See generally *Young v. Climatrol Southeast Distrib. Corp.*, 141 Ga. App. 235 (233 SE2d 54) (1977). We have studied the entire record, including the various depositions as well as the affidavits, and find that "[t]here is no hint or evidence that [appellee's] invoices are incorrect or that the material was, contrary to the invoices, never delivered." *Thomasson v. Pineco, Inc.*, supra at 796. No genuine issue of fact remains in this regard.

4. Appellant contends that an issue remains as to his usury defense. The specifics of his argument in this regard are not clear. Insofar as it is appellant's contention that appellee seeks usurious interest because not all of the goods listed on the unpaid account of the corporate principal were delivered, Division 3 of this opinion controls. Insofar as appellant asserts that, as a matter of law, interest at the rate of 1-½ percent per month would be usurious, that rate of interest is specifically authorized by OCGA § 7-4-6 where, as here, a "commercial account" remains unpaid. Compare *Paulk v. Carolina Eastern*, 172 Ga. App. 669 (324 SE2d 527) (1984).

According to the terms of the "Guaranty" signed by appellant, he guaranteed all sums owed to appellee by the corporation "whether principal, *interest*, or additional charges and expenses." (Emphasis supplied.) In the affidavit submitted in support of its motion, appellee's affiant specifically stated that the interest charged on the unpaid balance of the corporate account was "not usurious, nor is it otherwise in excess of that provided by law." Appellant produced nothing whatsoever to rebut this sworn statement. Once the movant for summary judgment has established a prima facie case, the respondent must come forth with *specific facts* showing that there is a genuine issue for trial. See generally *Thomasson v. Pineco, Inc.*, supra at 796. On the record before us, appellee established a prima facie case for the interest it charged on the unpaid corporate account guaranteed by appellant. Appellant did not produce specific facts which would support his assertion that such interest was usurious. Summary judgment for appellant was authorized.

5. It was not error to grant summary judgment in favor of appellee and to deny appellant's motion for summary judgment.

*Judgments affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 17, 1986.

*Stephen L. Ivie*, for appellant.
*John R. Rogers*, for appellee.