74167, 74168. BULLARD et al. v. CARRERAS; and vice versa.
(359 SE2d 429)

SOGNIER, Judge.

Manuel Carreras brought an action against Mary Bullard to collect $175,000 pursuant to a promissory note and guaranty agreement Bullard had co-signed. The jury found in favor of Carreras and judgment was entered on the verdict on May 16, 1985. Bullard filed a notice of appeal on June 17, 1985. On July 12, 1985, the trial court granted Bullard's motion for judgment notwithstanding the verdict and Carreras filed his notice of appeal. The cases are consolidated in this opinion.

1. We note that it appears of record that costs in the trial court were not paid until October 24, 1986, and thus the notice of appeal filed by Bullard on June 17, 1985 did not act as a supersedeas under OCGA § 5-6-46 (a) as to the order on Bullard's motion for judgment n.o.v. *Chappelaer v. Gen. GMC Trucks*, 130 Ga. App. 664, 665 (1) (204 SE2d 326) (1974).

2. Bullard was ordered by this court pursuant to Rules 27 (a) and 14 of the Court of Appeals, to file an enumeration of error and brief in Case No. 74167 no later than January 19, 1987. Bullard having failed to file an enumeration of error and brief as ordered, her appeal is accordingly dismissed.

3. Carreras (hereinafter appellant) contends the trial court erred by granting the motion for judgment n.o.v. made by Bullard (hereinafter appellee). " '(W)e will labor to retain intact the verdict returned by the jury to whom our system has entrusted the dispensing of justice.' [Cit.] . . . [A judgment n.o.v.] ' "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded." ' [Cit.] It may not be granted 'even where the evidence strongly supports but does not demand a particular finding.' [Cit.]" *Coates v. Mulji Motor Inn*, 178 Ga. App. 208, 209 (2) (342 SE2d 488) (1986).

The evidence adduced at trial shows that appellee's husband (now deceased) and Ray Minter, who were allegedly partners, persuaded appellant to finance a disco-dining venture in Roswell, Georgia. Appellee, her husband, Ray Minter and his wife were all present in the office of appellant's attorney, John Calhoun, Jr., and signed, in turn, a voluminous number of documents, including the promissory note and guaranty agreement in question here. Each party received a duplicate original of the promissory note; however, because the signature of the fifth co-signer, W. H. Burks, was subsequently obtained, appellant's duplicate original was the only promissory note with all five signatures on it. Appellant testified that the guaranty agreement admitted into evidence was an incomplete copy of the original, which had been lost. Appellant's copy of the guaranty agreement reflected both appellee and her husband had signed; the spaces for the Minters' signatures were blank. However, there was evidence as to the regularity of the signing of documents by the parties from which the jury could have inferred the guaranty agreement was properly executed. Further, a financing agreement, also executed during this meeting and signed by all the parties, recited that "[s]imultaneous with the execution of this agreement, [appellee and her husband and the Minters] are executing a 'Guaranty Agreement' in favor of [appellant], promising the repayment of the funds provided hereunder, in the event the [disco-dining venture] does not repay said amounts in the time provided in said promissory notes, executed concurrently with this agreement."

The trial court granted appellee's motion for judgment n.o.v. on the bases that (a) the jury did not have the original promissory note before them and (b) the "document" evidencing the contract showed

a shift or material increase in the risk assumed by appellee, thus discharging her liability under the contract. See generally *Holcombe v. Eng*, 163 Ga. App. 343, 344 (294 SE2d 568) (1982).

(a) We agree with appellant that the trial court erred by finding the jury did not have an original of the promissory note before it. The evidence adduced at trial reveals that the parties executed several duplicate originals of the promissory note. See *Raulerson v. Jones*, 122 Ga. App. 440, 441 (1) (177 SE2d 181) (1970). Appellant testified that his exhibit, P-1, was such an original of the promissory note and that it was signed in his presence on October 23, 1978 (the date recorded on the note) by all the parties except W. H. Burks, who signed subsequently. Edward Merrell, president of the corporation formed to run the disco-dining venture, testified that P-1 evidenced his signature on behalf of the corporation and that the other parties to the note, with the exception of Burks, signed the note the same time he did.

The reasoning behind the trial court's grant of judgment n.o.v. to appellee appears to involve discrepancies between exhibit P-1 and exhibit D-16 introduced by appellee and admitted over objection. Exhibit D-16 was introduced during appellee's examination of a handwriting analysis witness, as part of appellee's defense alleging her signatures on all the documents were forged. Exhibit D-16 consists of a photocopy of the text of the promissory note with the signatures only of appellee, her husband and the Minters; absent are the signatures either of Merrell or Burks or the date of the signing. In the discussion concerning the admission of D-16, appellee's attorney told the trial court he had obtained D-16 from appellant during the discovery process as a photocopy of appellant's original promissory note. Appellant's attorney stated he had not been involved with the discovery process, but that he had never seen a document without the signatures shown on P-1 until viewing D-16 that very day.

The trial court stated in its order that based on argument made during the hearing on the motion, it found that neither exhibit P-1 nor exhibit D-16 appeared to be an original and neither appeared to be completed fully in that all the signatures were not filled out on either exhibit. Since the trial transcript before this court reveals exhibit P-1 to be a complete and fully signed promissory note, it would appear the trial court's statement that P-1 was *not* complete and fully signed is based on a determination that D-16 is a photocopy of P-1 and because D-16 is missing two signatures and a date, then the two signatures and date now present on P-1 were added subsequent to the photocopying of D-16.

However, even assuming this explanation correctly reflects the reasoning behind the trial court's order, it is a well-established rule that the record as it exists at the close of the trial controls as to whether a motion for judgment notwithstanding the verdict should be

granted. *Wooten v. Life Ins. Co. of Ga.*, 93 Ga. App. 665, 670 (92 SE2d 567) (1956); *DeLoach v. Myers*, 215 Ga. 255, 256 (1) (109 SE2d 777) (1959); *Consolidated &c. Corp. v. Syncroflo*, 164 Ga. App. 275, 277 (2) (294 SE2d 643) (1982). Under this rule the trial court may not on motion for judgment n.o.v. eliminate evidence and then dispose of the case on the basis of the diminished record. See *Wooten*, supra. As recited above, the record at the close of the trial contained evidence which, to say the least, would have authorized the jury to find that appellant's exhibit P-1 was a fully completed original of the promissory note and thus the trial court erred by granting appellee's motion for judgment n.o.v. on this issue. See generally *Horton v. City of Macon*, 144 Ga. App. 380, 383 (2) (241 SE2d 311) (1977).

(b) The other basis for the trial court's grant of judgment n.o.v. involves appellant's apparent failure to obtain real property as collateral for the loan from all five co-signatories, subjecting appellee to an increased risk and exposing her to greater liability, which thereby discharged or released appellee. Above the signatures of appellee and her four co-obligors on the promissory note was the heading "CO-SIGNERS PROVIDING REAL PROPERTY AS COLLATERAL FOR THIS NOTE." However, the promissory note did not specify what interest the parties were required to have in the real property pledged as collateral. The note merely denominated three counties wherein was situated the property to be so pledged. Although it is uncontroverted that none of the deeds to secure debt executed as to the three pieces of property pledged as collateral reflected the Minters as owners thereof, there was evidence indicating Ray Minter held the first mortgage on one of the properties pledged by appellee's husband; and that because W. H. Burks was indebted to Minter, Minter got Burks to pledge property for his [Minter's] contribution to the collateral.

We need not determine whether the jury would have been authorized to find from this evidence adduced at trial that the Minters did, inferentially, "provide" collateral to secure the promissory note. Rather, we need only look to the guaranty, shown to have been signed by appellee, which provided that the guarantors consented and agreed that "[appellant] may, without prejudice to any claim against Guarantor[s] hereunder, at any time, or from time to time, at [appellant's] sole discretion, and without notice to Guarantor[s]: . . . 2. Exchange, release, or surrender any or all collateral security which [appellant] may at any time hold in connection with any obligation hereby guaranteed . . . ." OCGA § 11-3-606, cited by the trial court, is therefore inapplicable in view of this provision expressly reserving appellant's rights.

We further reject the argument made by appellee before the trial court (there being no appellee brief before this court) that appellant had to "hold" the collateral the Minters provided or intended to pro-

vide pursuant to the promissory note before appellant could exercise his right to release utterly that collateral. The long-standing rule that an increase in risk discharges a guarantor is based on the rationale that an increase in risk causes injury or impairment to the obligation of the co-maker or co-guarantor. The injury generally arises because the co-guarantor is both jointly and severally liable on the entire note. See *Holcombe*, supra at 344. Appellee, by signing the guaranty agreement, authorized appellant to increase, decrease, or release — unilaterally and without notice to her — the risk and responsibility she assumed as a co-guarantor. Thus, there was and could be no injury or impairment to appellee's obligation which was not authorized by appellee under the terms of the documents she signed absent a showing of fraud, accident or mistake. Further, there is no indication that fraud, accident or mistake were involved insofar as appellee was concerned in that the evidence shows the parties signing the documents knew what they were signing, fully understood the risks and responsibilities involved in the disco-dining venture, and knew that the three properties pledged would serve as the sole collateral for the loan. See generally *Bentley v. Nat. Bank of Walton County*, 175 Ga. App. 732, 733 (334 SE2d 331) (1985).

Accordingly, we find the trial court erred by granting appellee's motion for judgment n.o.v.

*Judgment reversed in Case No. 74168. Appeal dismissed in Case No. 74167. McMurray, P. J., and Beasley, J., concur.*

DECIDED JULY 2, 1987.

Mary W. Bullard, *pro se.*
*Douglas R. Daum*, for appellee.