## 76682. DEVER v. LEE.
(373 SE2d 224)

DEEN, Presiding Judge.

Appellant Alan Dever, a Ph.D. with expertise in epidemiology and related biomedical specialties, in 1982 agreed with appellee Ralph Lee, a medical doctor in general practice, to open an institution to be known as the Center for Preventive Medicine (CPM). According to their agreement, Lee would serve as medical director, working two to two-and-one-half days per week, for the nominal salary of $2,000 per month while also working part-time elsewhere. Also according to their agreed-upon arrangement, Dever would devote between 20 percent and 30 percent of his time to the Center while at the same time teaching at Mercer University's medical school and working as a consultant on certain health issues.

In order to finance the opening of the Center, Dever and Lee, in their respective capacities as president and vice-president of CPM, executed a promissory note for $40,000 to the First National Bank of Atlanta. Each gave his personal guaranty, and the note was further secured by a second mortgage on Dever's house. Dever and Lee also executed a three-year lease on the property where CPM was to be located. The Center opened in June 1982, with Dever taking care of operations, including expenses. Some months later he informed Lee that, because of low revenues from patients, it would be necessary to cut Lee's salary in half. Finding himself unable to subsist on this sum in conjunction with his other salary, Lee informed Dever that it would be necessary for him to make other employment arrangements, and that he would leave the Center as of March 25, 1983.

After termination of his employment at the Center, Lee was informed by Dever's attorney that he was still liable on the lease and note and would be expected to make regular payments. In the meanwhile, Dever unilaterally approached the bank with a view to extending the term of the note and changing it from a variable to a fixed-rate instrument, thereby reducing the monthly payments from the original $1,100-plus to $700-plus. A bank officer marked the original note "paid" and on April 29, 1983, issued a new note in the amount of $33,000, this being the amount of the unpaid balance on the original note at that time. The new note was signed by Dever; it is undisputed that Lee had no knowledge of these negotiations or of the existence of the second note. CPM continued to operate at a loss and closed its doors a few months after Lee's departure.

After Lee had declined to pay on the note or the lease, Dever arranged a compromise settlement of the lease for $5,000. He brought an action for contribution against Lee on both the lease and the note, seeking $2,500 on the lease and something in excess of $26,000 towards the approximately $53,000 which Dever had paid on the notes. Lee's counsel filed an untimely answer, and the case went into default. Dever moved for a default judgment, which was denied. The trial court subsequently opened the default, holding that the sheriff had failed to enter the return date and that counsel, consequently, had mistaken the date the answer was due. Both parties moved for directed verdicts, and the trial court granted Dever a directed verdict on the lease in the amount of $2,995.63. He directed a verdict for Lee with respect to the note, holding that as a matter of law the second note was a novation and that Lee's personal guaranty inured only to the bank and to Lee himself (or his heirs and assigns) and was not binding with respect to his co-obligor.

Dever appeals from the directed verdict on the note, enumerating as error (1) the trial court's holding that the new note was a novation discharging Lee from his obligation under the original note; (2) the holding that any waiver or consent given by Lee in the original note did not inure to Dever's benefit; (3) the trial court's determination that Lee was an uncompensated surety; (4) the holding that the change in duration and interest rate of the note constituted an increase in Lee's risk, which operated to discharge him; (5) the trial court's opening Lee's default allegedly without compliance with the statutory requirements. *Held*:

1. We initially call appellant's attention to Court of Appeals Rule 15 (a) (2), which requires that a copy of the enumeration of errors be filed as an integral part of the brief, in addition to the copy required under Rule 27.

2. We first address appellant's fifth enumeration, which assigns error to the trial court's ruling opening the default which occurred

when appellee's answer was filed on January 16, 1985. The answer, according to appellant's allegation, was six days late. The trial court, however, opened the default on the ground of excusable neglect despite non-compliance with OCGA § 9-11-55 (a). Through a series of incidents involving unclear handwriting and the failure of the process-server either to leave with Lee a copy of the return of service or to indicate the date of service on the papers themselves, Lee's answer was filed either six days late or three days early. Because he was unaware of the possibility that he might be considered in default, Lee's counsel did not follow the procedure for opening default as of right within fifteen days, as set forth in OCGA § 9-11-55 (a). The trial court found this oversight or mix-up not attributable to Lee or his counsel and therefore opened the default. Excusable neglect can be determined not by any fixed rule, but rather by the circumstances of each individual case. *Snow v. Conley*, 113 Ga. App. 486 (148 SE2d 484) (1966). This determination is within the sound discretion of the trial court, and will not be disturbed by the appellate court absent abuse of discretion. *Alex v. Parkway-Blvd. Corp.*, 157 Ga. App. 269 (277 SE2d 276) (1981). We find no abuse of discretion here. This enumeration is therefore without merit.

3. We shall address appellant's first four enumerations together, since they are part and parcel of the same matter and must be subjected to the same analysis. Appellant Dever contends that appellee's defense of novation and release is ill-founded. We find it unnecessary to decide whether the second note was a novation. It is undisputed that the original note was an agreement between the Center for Preventive Medicine (CPM) and the bank. In connection with that note, both appellant and appellee signed personal guaranties. The guaranty agreement signed by appellee purports to cover the indebtedness of the principal, which is identified as CPM, and provides that "[t]his instrument is continuing, absolute and unconditional and shall remain in full force and effect as to the Undersigned, subject to discontinuance as to any of the Undersigned . . . only" upon receipt of written notice by the bank from the undersigned of discontinuance of the obligation. The instrument further provides that the undersigned consents and agrees that the bank may at any time, without notice to the undersigned, "extend or renew for any period (whether or not longer than the original period), alter, modify or exchange, any of the Obligations, or any writing evidencing the Obligations, or any of them"; that the undersigned expressly waives "notice of the existence or creation of all or any of the Obligations"; and that "[t]he liability and obligations of the Undersigned hereunder shall not be released, impaired or affected in any manner by reason of . . . [t]he taking of any action consented to or permitted by the Undersigned herein or otherwise."

The second note is also an agreement between CPM and the bank. It is true that, whereas the first note was signed by both appellant and appellee in their respective corporate capacities, the second was signed only by appellant, in his capacity as president of CPM, but we do not find this difference significant. The note clearly obligates the corporation,. and the evidence is undisputed that no new funds were advanced to the corporation on the second note. Further, no question of appellant's authority to execute such a note may be raised by appellee, since the guaranty instrument signed by appellee also provides that "if the Principal is a corporation, . . . this instrument covers all obligations to the Bank purporting to be made in behalf of such organization by any officer or agent of the same, without regard to the actual authority of such officer or agent." Thus, since appellee consented in advance to be responsible for just such an instrument as the second note, he cannot have been discharged as a surety by its execution, even if under other circumstances such a note could be considered a novation. See generally *Bullard v. Carreras*, 183 Ga. App. 539, 543 (359 SE2d 429) (1987).

We find no merit in appellee's argument that appellant may not rely on the consent contained in the guaranty because the language of the guaranty provides that its benefits inure only to the bank and to the undersigned, i.e., appellee, since appellant's right to contribution stems not from any language in the guaranty, but from operation of law. Because appellee was not discharged by the execution of the second note, appellant and appellee remained co-sureties, and OCGA § 10-7-50, a codification of the common law, provides that "[w]here several are sureties for the same principal for the same sum of money, either by one or by distinct instruments, and one pays more than an equal share of the sum, he may compel contribution from his cosureties. . . ." Thus the fact that appellant and appellee were not signatories to the same guaranty agreement but rather signed separate agreements, each of which contains language providing that the agreement inures only to the benefit of the bank and the undersigned, is of no consequence here. Because both appellant and appellee were sureties for the obligations of CPM, and appellant paid CPM's obligation to the bank, appellant is entitled to contribution from appellee, and the trial court erred by directing a verdict in appellee's favor on this issue. See *Hall v. Rome Auto. Co.*, 181 Ga. App. 621, 623-624 (3) (353 SE2d 542) (1987). Accordingly, the judgment must be reversed.

4. Appellee has filed a motion for a penalty pursuant to OCGA § 5-6-6. This Code section permits but does not require the imposition of a 10 percent penalty in certain circumstances in which the court considers the appeal to have been taken solely for the purpose of delay. The facts of the instant case do not constitute such circumstances as would authorize the imposition of the penalty, and we therefore

deny the motion.

*Judgment reversed. Sognier and Pope, JJ., concur. Carley, J., disqualified.*

DECIDED SEPTEMBER 6, 1988 —
REHEARING DENIED SEPTEMBER 21, 1988 

*Larry S. McReynolds, J. Michael Welch, Frederic S. Beloin*, for appellant.

*William H. Arroyo*, for appellee.