A91A1413. ANDERTON v. CERTAINTEED CORPORATION.
A91A1414. CERTAINTEED CORPORATION v. GENERAL
INSULATION COMPANY et al.
(411 SE2d 558)

COOPER, Judge.

Blair Anderton ("Anderton") is the president of AS&G, a distributor of insulation products and General Insulation Company ("General"), a major subpurchaser of products from AS&G. Certainteed Corporation ("Certainteed"), a manufacturer of building products, sold insulation materials to AS&G Services, Inc. ("AS&G") on account. In 1988, AS&G's account became in arrears and Certainteed requested that General execute a corporate guaranty in favor of Certainteed guaranteeing all of AS&G's obligations to Certainteed. The corporate guaranty was signed by Anderton's brother, James Anderton, the vice-president of General. When AS&G's account was

still in arrears in 1989, Certainteed requested and AS&G executed a promissory note (hereinafter referred to as the "1989 note") in favor of Certainteed in an amount in excess of $500,000, which represented the outstanding balance of AS&G's accounts. Anderton executed the note as president of AS&G, and simultaneously executed a personal guaranty in favor of Certainteed for all obligations of AS&G due under the 1989 note. Following the execution of the note, AS&G continued making purchases from Certainteed on account. In 1990, the 1989 note was in default and a second note (hereinafter the "1990 note") was executed for an amount representing the amount due under the 1989 note plus the balance of AS&G's account for goods purchased after execution of the 1989 note. The 1990 note was also signed by Anderton as president of AS&G. After making only one payment due under the 1990 note, AS&G defaulted. Certainteed filed a complaint against AS&G, General, and Anderton for amounts due under the 1989 note and the respective guaranties. Certainteed moved for summary judgment against all the defendants and Anderton filed a cross-motion for summary judgment. The trial court granted Certainteed's motion against AS&G but denied Certainteed's motion against General and Anderton. The trial court also denied Anderton's motion for summary judgment. We granted Certainteed's and Anderton's interlocutory appeals from the denial of their respective motions for summary judgment.

## Case No. A91A1413

1. Anderton's sole enumeration of error is that the trial court erred in denying his motion for summary judgment because as a matter of law the 1990 note was a novation of the 1989 note thereby discharging him from his obligation as guarantor of the 1989 note. OCGA § 10-7-21 defines a novation as "[a]ny change in the nature or terms of a contract" and further provides that any novation made without the consent of the surety discharges the surety. Anderton argues that since the 1990 note included the outstanding balance of the 1989 note plus purchases made on AS&G's account after the execution of the 1989 note, the additional debt was a material change in the terms of the 1989 note and constituted a novation. Certainteed argues that even if a novation occurred, Anderton consented to the novation. We agree. The guaranty signed by Anderton provided that Anderton agreed that, without notice to him, Certainteed "(i) may extend, renew, modify or waive any terms of the obligations of [AS&G]; (ii) may release, surrender, exchange, compromise, take security for or settle the obligations of [AS&G], whether by account, notes, or otherwise. . . ." It is axiomatic that "[a] surety or guarantor may consent in advance to a course of conduct which would otherwise

result in his discharge. [Cits.]" *Dunlap v. C & S DeKalb Bank*, 134 Ga. App. 893, 896 (4) (216 SE2d 651) (1975); see also *Panasonic Industrial Co. v. Hall*, 197 Ga. App. 860 (1) (399 SE2d 733) (1990). The unambiguous language of the guaranty allowed Certainteed to "extend, renew, modify or waive any of the terms of the obligations of AS&G" and to "release, surrender, exchange . . . the obligations of [AS&G] whether by account, notes or otherwise." We find that Anderton, by signing the guaranty with the above language, consented to the action of Certainteed and AS&G with respect to the execution of the 1990 note. "Thus, since [Anderton] consented in advance to be responsible for just such an instrument as the second note, he cannot have been discharged as a surety by its execution, even if under other circumstances such a note could be considered a novation. [Cit.]" *Dever v. Lee*, 188 Ga. App. 483, 486 (3) (373 SE2d 224) (1988). In addition, the record reflects that Anderton participated in negotiations leading to the execution of the 1990 note and signed the 1990 note on behalf of AS&G. Therefore, Anderton was clearly aware of the terms of the 1990 note and cannot now claim that he did not consent to those terms. For the foregoing reasons, we conclude that the trial court did not err in denying Anderton's motion for summary judgment.

## Case No. A91A1414

2. Certainteed enumerates as error the trial court's denial of its motion for summary judgment against Anderton. For the reasons discussed in Division 1 above, we conclude that no question of fact existed as to Anderton's advance consent to the alleged novation; therefore, summary judgment should have been granted to Certainteed.

3. Certainteed also contends that the trial court erred in denying its motion for summary judgment against General on the corporate guaranty. General argues that James Anderton was not authorized to sign the corporate guaranty; therefore, the guaranty executed by him was not binding on General. The corporate guaranty was executed on December 30, 1988, along with a corporate resolution which indicated that the president and secretary were empowered to sign the guaranty on behalf of General. In its answer to Certainteed's complaint, General admitted executing the guaranty. However, in an amended answer filed almost two years later, General denied executing the guaranty and raised the issue of James Anderton being unauthorized to sign the guaranty. It is undisputed that James Anderton was the vice-president of General and that at the time he signed the guaranty, the president, Anderton, was out of town. "If [James Anderton] lacked any such authority to execute the [guaranty], there appears to be no evidence [that Certainteed] knew of any such restriction or lack of

authority." *Fresh & Fancy Produce v. Brantley*, 190 Ga. App. 128, 129 (2) (378 SE2d 379) (1989). Based on the facts in this case, we conclude that James Anderton had, at least, apparent authority to execute the guaranty on behalf of General in Anderton's absence. Since James Anderton had apparent authority, if not actual authority, to sign the guaranty, General cannot defeat the guaranty by alleging that James Anderton had no such authority. *Holliday Constr. Co. v. Sandy Springs Assoc.*, 198 Ga. App. 20 (1) (400 SE2d 380 (1990).

Certainteed also argues that even if James Anderton did not have authority to sign the guaranty, General ratified the guaranty agreement by retaining the benefits of the agreement. The corporate resolution signed on the same day as the guaranty recited that Certainteed required that General execute the guaranty as a condition of its extension of credit to AS&G and that General was interested in AS&G being able to make credit purchases from Certainteed. The record reflects that following the execution of the corporate guaranty, Certainteed did in fact extend additional credit to AS&G which allowed AS&G to purchase products from Certainteed on account. Thus, General retained the benefits of the allegedly unauthorized guaranty for well over a year and did not claim any lack of authority of James Anderton to execute the guaranty until Certainteed filed its motion for summary judgment. We conclude that no issue of material fact remained as to whether there was a ratification of the allegedly unauthorized act of James Anderton and that summary judgment should have been granted to Certainteed on the corporate guaranty. *Holliday Constr. Co.*, supra; *Lanier Ins. Agency v. Citizens Bank*, 168 Ga. App. 424, 425 (309 SE2d 419) (1983).

General argues that Certainteed's continued extensions of credit to AS&G after the execution of the corporate guaranty, without General's consent, released General from any obligation under the corporate guaranty. We note initially that the corporate guaranty contained the same language as the personal guaranty signed by Anderton, with respect to Certainteed's ability to "extend, renew, and modify" the obligations of AS&G. In addition, the guaranty executed by General provided that General guaranteed all obligations of AS&G, including the purchase price of all products "heretofore sold by Certainteed to [AS&G], and which may be sold hereafter by Certainteed to [AS&G]." For the reasons discussed in Division 1, we conclude that General consented in advance to the extension of additional credit to AS&G.

*Judgment affirmed in Case No. A91A1413. Judgment reversed in Case No. A91A1414. Birdsong, P. J., and Pope, J., concur.*

Decided October 16, 1991.

Davis, Matthews & Quigley, Ron L. Quigley, J. Charles Olderman, for Anderton and General Insulation.

Troutman, Sanders, Lockerman & Ashmore, Douglas D. Salyers, A. William Loeffler, Ezra H. Cohen, for Certainteed.