A97A2454. STEINER v. HANDLER et al.

(495 SE2d 132)

BIRDSONG, Presiding Judge.

Appellant Cynthia L. Steiner appeals the order of the superior court granting partial summary judgment to appellees William L. Handler and Karen J. Handler.

Vinings Bank & Trust brought the underlying civil action against three officers and directors of Corporate Art International, Inc. (Corporate Art) and their wives, all of whom had been guarantors for certain promissory notes, agreements and other obligations of Corporate Art. Subsequently, Thornton White Corporation took assignment of the interests of Vinings Bank & Trust (Bank) and was substituted a party-plaintiff. In response to plaintiff's initial complaint, appellees/defendants William and Karen Handler filed an answer, a counterclaim against plaintiff, and cross-claims for contribution against the other four remaining defendants, including appellant and her spouse, based on the Handlers' payment to plaintiff on

defendants' guaranty liability. Appellees then filed a motion for partial summary judgment against the four cross-claim defendants. Cross-claim defendants Gene W. Young and Cynthia M. Young failed to answer both the initial complaint and the Handlers' cross-claim, and cross-claim defendant Eric C. Steiner declared bankruptcy before the trial court ruled on the Handlers' motion; thus, only appellant Cynthia Steiner defended against the motion for partial summary judgment. The trial court granted appellees' motion and appellant appealed.

The record reflects that in March 1989, Corporate Art obtained a $225,000 line of credit from Vinings Bank & Trust and executed notes in favor of the Bank. Also, in March 1989, the six defendants (Handlers, Youngs and Steiners) each executed and delivered to the Bank guaranty agreements and third-party pledge agreements; the former instruments being executed under seal. The guaranty pertinently provided: "The obligations covered by this Guaranty include any and all indebtedness or liability of the Principal to the Bank now existing or hereafter coming into existence, whether express or implied, direct or indirect, absolute or contingent, and any renewals or extensions thereof, in whole or in part. . . ." The Guaranty expressly was being given "[i]n consideration of the sum of Five Dollars ($5.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, as well as for the purpose of inducing the [Bank] to extend credit to [Corporate Art] . . . or to renew or extend in whole or in part any existing indebtedness of [Corporate Art] to Bank."

In early 1991, appellant and Eric Steiner were divorced. (Note: Appellees assert and appellant does not deny that she has since remarried Eric Steiner.) Subsequently, there was a rearrangement of the structure of the indebtedness between the Bank and Corporate Art and a new agreement and loan arrangement were reached as memorialized by a consolidated loan and security agreement and master note, dated June 5, 1991. The 1991 loan and security agreement were modified on at least three subsequent occasions, as memorialized in a forbearance agreement, a first modification of the loan and security agreement, dated January 31, 1992, and a second modification of the loan and security agreement, dated September 29, 1992. The only documents personally signed by appellant, however, were the original guaranty and third-party pledge agreement of 1989. In April 1993, the Bank declared a default on the Corporate Art line of credit agreement and demanded payment of $249,000 from Corporate Art and its guarantors. Certain corporate assets were applied to the debt and the Bank advertised to foreclose deeds to secure debt on realty pledged by appellees. Appellees paid $176,000 to the Bank on their guaranty liability and the joint and several lia-

bility of their co-defendants. Appellant enumerates three errors. *Held*:

1. In the trial court, appellant asserted the defense of lack of consideration against the claims of contribution of the appellees. The trial court, citing OCGA § 10-7-1 and *Griffin v. Ga.-Pacific Corp.*, 177 Ga. App. 852 (341 SE2d 499), found that lack of consideration is not a defense. The original guaranty agreement reveals on its face that appellant and her husband received $5 and other valuable consideration, including the extension of credit to Corporate Art. A contract of surety can be based, as was done in this case, on "consideration of credit or indulgence or other benefit given to [the surety's] principal." See generally OCGA § 10-7-1; compare *Virgil v. Kapplin*, 187 Ga. App. 206, 208 (3) (369 SE2d 808). Moreover, appellant does not expressly enumerate as error the trial court's holding that lack of consideration was not a defense, and such a contention is not reasonably contained within any of the errors enumerated. Thus, this issue is not preserved on appeal. See *DeKalb County v. Lenowitz*, 218 Ga. App. 884, 887 (1) (463 SE2d 539).

2. Appellant, citing *Bearden v. Ebcap Supply Co.*, 108 Ga. App. 375 (133 SE2d 62), tacitly asserts that her 1989 guaranty was unenforceable because she executed the instrument when she was married to Eric Steiner. However, when appellant signed the instrument, married women had become vested with the legal power to enter into valid suretyship agreements. See generally OCGA §§ 10-7-1; 19-3-10. *Bearden*, supra, is distinguishable from the facts of this case. Moreover, this contention is not reasonably contained within the scope of appellant's enumerations of error and, thus, is not preserved on appeal. *DeKalb County*, supra.

3. Appellant contends the trial court erred in granting partial summary judgment against her, because the 1991 agreement and its subsequent modifications effected a novation of those instruments on which her liability was based. Appellant agreed in 1989 to guarantee payment of the line of credit for Corporate Art — the corporation of which her husband was president and shareholder. The guaranty pertinently extended to "any and all indebtedness or liability of the Principal to the Bank now existing *or hereafter coming into existence. . . .*" (Emphasis supplied.) The guaranty also contained certain express waivers of various rights by appellant, including the following: "The Undersigned [appellant and husband] hereby consents and agrees that the Bank may at any time *without notice to or further consent from* the Undersigned, either with or without consideration: . . . (2) Extend or renew for any period, whether or not longer than the original period, alter, *modify or exchange* any of the Obligations or any writing evidencing the Obligations hereunder. . . ." (Emphasis supplied.) Further, appellant expressly waived, inter alia,

notice of "the creation or extension or renewal *of any [o]bligation*" under the guaranty; and, "agree[d] that the terms, conditions and provisions of any note or other evidences of indebtedness secured by this Guaranty, heretofore *or hereafter* executed, shall be and become a part of this Guaranty, the Undersigned [appellant and husband] hereby ratifying and confirming all such terms, conditions, and provisions of said notes or other evidences of indebtedness." (Emphasis supplied.) It is clear from a reading of the guaranty in its entirety that appellant consented in advance to the very course of conduct in which the Bank subsequently, and in good faith, engaged to benefit Corporate Art. "It is axiomatic that '(a) surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge.' " *Anderton v. Certainteed Corp.*, 201 Ga. App. 538, 539-540 (1) (411 SE2d 558); accord *Dunlap v. C & S DeKalb Bank*, 134 Ga. App. 893, 896 (4) (216 SE2d 651) (surety or guarantor may consent in advance to course of conduct which otherwise would result in his discharge); compare *Greenwald v. Columbus Bank &c.*, 228 Ga. App. 527 (492 SE2d 248) (guarantors can consent in advance to changes that are subsequently made). Appellant agreed in advance to the providing of additional credit extensions by the Bank and gave guaranty as to any and all indebtedness or liability of Corporate Art now existing or hereafter coming into existence. Moreover, appellant expressly consented in advance to the Bank's giving, without notice to or further consent by appellant, with or without consideration, to the extension or renewal of any of the obligations, arising under the guaranty, for any period and to the alteration, modification, or exchange of any of the obligations arising under the guaranty. " 'Thus, since [appellant] consented in advance to be responsible for just such [instruments as subsequently were executed without her participation and to the obligations arising therefrom, she] cannot have been discharged as a surety by [such occurrences], even if under other circumstances such a note could be considered a novation.' " *Anderton,* supra at 540 (1); accord *Dever v. Lee*, 188 Ga. App. 483, 485 (3) (373 SE2d 224). *Upshaw v. First State Bank*, 244 Ga. 433 (260 SE2d 483) is distinguishable and not controlling. Appellant's first enumeration of error is without merit.

4. Appellant contends the trial court erred in disregarding the affidavit of Eric Steiner which demonstrated that a genuine issue of material fact exists whether the contribution claim should be barred because of an agreement between William Handler and Eric Steiner. Mr. Steiner merely stated in his affidavit that he, Gene Young, and William Handler "became the principals of [Corporate Art] with the understanding that Mr. Handler would provide the funding and Mr. Young and myself the expertise to run the business. Our understanding . . . throughout the operation of the business, was that Handler

would not seek contribution from us of any amounts owed by [Corporate Art] to other entities, including Vinings Bank & Trust." Mr. Handler executed an affidavit in which he expressly denies that he ever discussed contribution or waiver of any claim of contribution with Eric or Cynthia Steiner.

Assuming for purposes of this partial summary judgment litigation that Mr. Handler had a mere "understanding" with Eric Steiner and Gene Young that he would not seek contribution, nevertheless, this fact alone would not create an enforceable agreement not to seek contribution, particularly a specific agreement for the third-party benefit of appellant Cynthia Steiner. OCGA § 13-3-1 provides: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." See also OCGA § 13-3-2. There exists no evidence that this so-called understanding was intended by the parties to be a binding agreement or that it was backed by adequate consideration (see, e.g., OCGA §§ 13-3-40 (a); 13-3-41; 13-3-42). Further, utilizing the test to determine whether a contract is unenforceable because of vagueness set forth in *Davidson Mineral Properties v. Baird*, 260 Ga. 75, 79 (7) (390 SE2d 33), we conclude that this mere "understanding" was too vague to be enforceable. See also *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 362 (7) (359 SE2d 148); *Jones v. Ely*, 95 Ga. App. 4 (96 SE2d 536). Assuming arguendo that the so-called "understanding" had constituted an enforceable agreement in accordance with limited subject matter stated in Mr. Steiner's affidavit, there exists no evidence that appellant Cynthia Steiner was a party to or a third-party beneficiary of such an agreement.

5. Appellant contends the trial court erred in granting partial summary judgment as it disregarded the requirement of commercial reasonableness on disposition of collateral. We note that "the reciprocal rights and liabilities among the cosureties which arise from the relationship, such as the right to contribution and to the benefit of security and indemnity in the hands of the other, are not founded on contract but on general considerations of justice and equity." *Floyd Davis Sales v. Central Mtg. Co.*, 197 Ga. App. 532, 533 (398 SE2d 820). OCGA § 23-2-71 provides: "In cases of joint, joint and several, or several liabilities of two or more persons, where all are equally bound to bear the common burden and one has paid more than his share, he shall be entitled to contribution from the others. . . ." The right of appellees to obtain contribution is not restricted to their first establishing that the creditor Bank disposed of the collateral in a commercially reasonable manner. "The permission to have contribution 'where all are equally bound to bear the common burden, and one has paid more than his share,' is absolutely unrestricted." *Southern R.*

*Co. v. City of Rome*, 179 Ga. 449, 452 (176 SE 7). (Moreover, the burden of enforcing the Bank's obligations toward the collateral should not, in fairness, be imposed upon the unfortunate coguarantor or cosurety who has been required to make payments for all. Cf. 38 AmJur2d, Guaranty, § 129.) The authority cited by appellant, pertaining to the right of a creditor to claim a deficiency resulting from a sale of collateral, is not controlling as to this issue.

Additionally, the record does not contain any evidence that the Bank failed to sell the Corporate Art collateral in a commercially reasonable manner; applying the standard in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), we find no genuine issue of material fact would exist as to appellant's contention. Appellant's enumeration, as crafted, is without merit.

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED DECEMBER 15, 1997.

*George M. Geeslin*, for appellant.
*Gershon, Olim, Katz & Loeb, Jay E. Loeb*, for appellees.

