The **TRESSLAR COMPANY, INC.**, Appellant,

v.

Edwin C. **FRITTS** and his wife, Mary Evelyn Fritts, Appellees.

Court of Appeals of Kentucky.

March 2, 1984.

E. Lambert Farmer, Jr., King, Deep, Branaman & Farmer, Henderson, for appellant.

J. Wendell Roberts, Westberry & Roberts, Marion, for appellees.

Before CLAYTON, LESTER and MILLER, JJ.

MILLER, Judge.

This is an appeal from a judgment of the Crittenden Circuit Court. In a trial before the court, judgment was entered imposing liability upon appellant as guarantor of a certain "promissory note" executed by Darrell G. Jent and Shirley F. Jent, his wife, in favor of appellees Edwin C. Fritts and Mary Evelyn Fritts, his wife.

On October 16, 1972, appellees, the Fritts, conveyed certain real estate located in Crittenden County, Kentucky, to the Jents. As part of the consideration for the conveyance, the Jents executed and delivered unto the Fritts the following *unsecured* promissory note:

## PROMISSORY NOTE

For value received, we, Darrell G. Jent and his wife, Shirley F. Jent, of Route 2, Box 730, Newburgh, Indiana, hereby promise to pay to the order of Edwin C. Fritts and his wife, Mary Evelyn Fritts, or to the survivor of them, at Sturgis Road, Marion, Kentucky, the sum of THIRTY–THREE THOUSAND AND NO/100 DOLLARS ($33,000.00) without interest, payable in monthly installments of $183.33 each, beginning on the 15th day of November, 1972, and continuing of (sic) the 15th day of each and every month thereafter until paid in full, with all sums remaining due and payable being due and payable on the 15th day of October, 1987.

The undersigned further agree to grant unto the said Edwin C. Fritts and his wife, Mary Evelyn Fritts, a Second Mortgage on the Victor Hunt farm at such time as the undersigned obtains title to the same, in order to better secure payment of this note.

Dated at Marion, Kentucky, this the 16th day of October, 1972.

/s/Darrell G. Jent
DARRELL G. JENT
/s/Shirley F. Jent
SHIRLEY F. JENT

Apparently the Jents never acquired the "Victor Hunt Farm"; thus the promissory note remained unsecured.

Later, the Jents conveyed a portion of subject real estate to D. Jent, Inc., an Indiana corporation, solely owned by them. The corporation developed the land as a shopping center known as "Darben Plaza Shopping Center," and leased a portion to appellant The Tresslar Company, Inc., (Tresslar) as a tenant.

There came a time when the Fritts desired to have additional assurance as to payment of the note. This was some time around April 25, 1974. The evidence is clear that payments on the note were not delinquent at that time. The Fritts' concern probably emanated from the fact that the Jents had not arranged for a second mortgage on the "Victor Hunt Farm" as promised in the note. Nevertheless, at the Fritts' insistence, the Jents called upon Tresslar, the tenant of their corporation, to offer assurance to the Fritts that the monthly payments upon the promissory note would be met. On April 25, 1974, Tresslar wrote Mr. Fritts the following letter:

The
TRESSLAR
Company, Inc.

General Office and Warehouse
P. O. Box 1009 1902 N. 2nd St.
Vincennes, Indiana 47591

April 25, 1974

Mr. Edwin Fritts
Sturgis Rd.
Marion, Kentucky
42064

Re: Rent payment on
Shopping Center.

Dear Mr. Fritts,

This letter is to acknowledge my conversation with Darrell Jent in reference to rent on Darben Plaza Shopping Center.

Please except (sic) this letter as our guarantee to you at the rate of $183.00 per month for the term of your contract with Mr. Jent, in case of default by d. (sic) Jent, Inc., in turn we will deduct from our rent paid to d. (sic) Jent, Inc.

Respectfully Yours,
/s/Robert Tresslar
The Tresslar Company
Mr. Robert Tresslar,
Pres.

RT/vlaf

The Jents defaulted upon the note. The Fritts called upon Tresslar to pay under the terms of the letter which the Fritts maintained was a guaranty. The trial court held for the Fritts that the letter was a guaranty, thus precipitating this appeal by Tresslar. The trial court reasoned that the matter was covered by KRS 355.3–416(1) (Uniform Commercial Code). Section 416(1) provides:

"Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

■ We affirm the judgment of the trial court under the principle that a correct decision will not be disturbed on appeal merely because it is based upon incorrect grounds or reason. *See Haddad v. Louisville Gas & Electric Company*, Ky., 449 S.W.2d 916 (1969). The Uniform Commer-

cial Code (KRS Chapter 355) has no application to the facts at hand. *See Brooks v. United Kentucky Bank*, Ky.App., 659 S.W.2d 213 (1983). The provisions of the UCC apply to guaranties appearing upon the face of the commercial instrument or at least executed in simultaneous contemplation. Section 416(1) obliterates the distinction between a surety and a guarantor. *See E'town Shopping Center, Inc. v. Lexington Finance Company*, Ky., 436 S.W.2d 267 (1969).

■ Tresslar's letter of April 25, 1974, in order to constitute a guaranty, must be considered in light of traditional contract law unmodified by the UCC. A guaranty is a particular specie of contract. There must be the essential elements of a contract in order to bind Tresslar as a guarantor. 38 Am.Jur.2d *Guaranty* §§ 42 and 70 et seq. (1968). The use of the word "guarantee" in a writing is not itself controlling, and the existence of a guaranty contract is based upon the words used against the "background" of circumstances. The words "guaranty" or "guarantee" are often used in commercial transactions without an intention to be bound by a primary or independent obligation. *See* Am.Jur.2d *Guaranty* § 5 (1968). Upon the totality of circumstances, we do not believe Tresslar's letter of April 25 to have been its guarantee to answer for the primary obligation of the Jents. It was not supported by the elements of a contract, and we believe it was nothing more than an acknowledgment that in the event the Jents defaulted upon the note payments to the Fritts, the lease payments were to be directed to the Fritts. It was the recognition by Tresslar that the rents had been assigned to the Fritts, upon default by the Jents. The foregoing analysis is supported by 1A A. Corbin, *Corbin on Contracts* § 213 (1963), wherein it is stated:

In the great field of suretyship, it is beyond question that the debt or obligation of the principal obligor is not a sufficient basis for the enforcement of the promise of the surety or guarantor. If the promises of the principal and the

surety are made simultaneously, they may be supported by a single consideration; the loan of money by the creditor to the principal is a sufficient consideration for the promises of both principal and surety. But for the promise of any surety that is made subsequently to the advancement of the money to the principal, there must be a new consideration. The fact that the loan has been made and the principal is indebted is not a sufficient reason for enforcement of the surety's subsequent promise.

We are strengthened in our position by *Restatement (Second) of Contracts* § 88 (1981), which states in part as follows:

A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if

(a) the promise is in writing and signed by the promisor and *recites a purported consideration;* or

. . . .

(c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person, *and the promise does induce such action or forbearance.* (Emphasis added).

We find no purported consideration. Nor do we find forbearance on the part of the Fritts which may have fulfilled the element of consideration necessary for a guaranty contract.

There is, however, a reason for imposing liability upon Tresslar, and that reason emanates from the "doctrine of merger." The corporations involved were nothing more than the *alter egos* of the Jents and Tresslar. On June 11, 1980, Robert R. Tresslar, stockholder and president of The Tresslar Company, Inc., acquired legal title to the leased premises thus effectively merging Tresslar's leasehold estate with the reversionary estate. Mergers are not favored in the law. 28 Am.Jur.2d *Estates* § 375 (1966). We do not think mergers should be allowed to defeat the interest of a third party of which the purchaser is actually aware. Where unmatured rents are assigned to a third party, a purchaser of the "reversion" with knowledge of the assignment does not acquire the right to the rents. KRS 383.100(2); 49 Am.Jur.2d *Landlord and Tenant* § 528 (1970). The notice must be "actual" as opposed to "constructive" as derived from recordation. *Cf. Anderson v. Island Creek Coal Corporation,* 297 F.Supp. 283 (W.D.Ky.1969). Here there is no doubt that Robert R. Tresslar's purchase of the premises and the effective merger of the estates and termination of the leasehold was with actual knowledge that the Jents had caused their corporation to assign the rental payments to the Fritts in the event of default in payment of the unsecured note. We believe it is a sound rule of law that where a tenant agrees to pay monthly installments on a promissory note owed by the sole stockholder of his corporate-landlord to a third party from rentals otherwise payable to his corporate-landlord, the tenant cannot defeat the obligation by the act of its officer and stockholder in purchasing the leased premises thereby effectively terminating the lease through merger. Or, stated another way, where the right to receive rental payments is in a third person, the lessee with actual notice of that fact cannot defeat the right of the third person to receive the rentals by directly or indirectly acquiring the reversion.

For the foregoing reasons the judgment of the Crittenden Circuit Court is affirmed.

All concur.