A91A1523. GUNTER et al. v. TRUE.
(416 SE2d 768)

Judge Arnold Shulman.

On December 16, 1986, the appellee, David True, transferred 50 acres of land and $200,000 in cash to Atlanta Devlin, Inc., in return for that corporation's promissory note in the amount of $450,000. Contemporaneously with the execution of this note, the appellants, Michael Gunter, Edwin A. Scott, Jr., and Theodore C. Whitson,[1] each

---

[1] Although Whitson will be referred to in this opinion as an appellant, he died during the

signed a document entitled, "Guarranty," (sic) specifying as follows: "In consideration of one dollar and other valuable consideration, we . . . jointly and severally guarantee the full and faithful performance of all obligations required by the promissory note dated December 16, 1986 between Atlanta Devlin, Inc. and David W. True in the principal amount of $450,000." In addition, each of the appellants' signatures on this document was followed by the word, "Guarantor."

The corporation subsequently defaulted on the note, and its board of directors, which included appellants Scott and Whitson, informed the appellee that the company was insolvent, having total assets of only $5.35 and debts in excess of $119,000. Also, the corporation's attorney wrote the appellee's attorney a letter informing him that the corporation could not pay the obligation because it was "without assets and totally insolvent." The appellee then instituted the present action against the appellants seeking to enforce the guaranty. In their respective answers, the appellants notified the appellee "to proceed to collect the indebtedness from the principal." The appellee did not do so, and after the passage of three months the appellants filed motions for summary judgment asserting that they had been discharged from their obligation as guarantors pursuant to OCGA § 10-7-24, which provides, in pertinent part, as follows: "Any surety, guarantor, or endorser, at any time after the debt on which he is liable becomes due, may give notice in writing to the creditor . . . to proceed to collect the debt from the principal . . .; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice the . . . guarantor . . . shall be discharged." The trial court denied the appellants' motions for summary judgment, concluding that because the guaranty applied to a negotiable instrument, their obligation was governed by Article 3 of the Uniform Commercial Code rather than by OCGA § 10-7-24. The case is before us pursuant to our grant of the appellants' application for interlocutory review of this ruling.

OCGA § 11-3-416 provides, in pertinent part, as follows: "(1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party. . . . (3) Words of guaranty which do not otherwise specify guarantee payment. . . . (5) when words of guaranty are used presentment, notice of dishonor, and protest are not necessary to charge the user."

There appears to be no question that the promissory note guaranteed by the appellants qualifies as a negotiable instrument under

course of the present litigation, and his executors were substitued for him as parties.

OCGA § 11-3-104.[2] However, the appellants contend that the discharge provision contained in OCGA § 10-7-24 is nevertheless applicable for three reasons: (1) Because it does not conflict with OCGA § 11-3-416 (1); (2) because this court has previously held, in *Pine Timber Co. v. Anthony*, 191 Ga. App. 375, 376 (381 SE2d 591) (1989), that OCGA § 10-7-24 was not "superseded by statutes derived from the Uniform Commercial Code and codified in OCGA Title 11"; and (3) because the guaranty was written on a separate document from the note itself, thus rendering OCGA § 11-3-416 inapplicable. We reject each of these contentions.

1. As previously indicated, OCGA § 11-3-416 (1) specifies that " '[p]ayment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor *without resort by the holder to any other party*." (Emphasis supplied.) It is well settled that the word "guarantor" following a signature on a negotiable instrument signifies a guarantee of payment under this Code section and therefore relieves the holder of any need to sue the maker before suing the guarantor.[3] See *Mitchell v. Ringson*, 169 Ga. App. 88 (1) (311 SE2d 516) (1983); *Sadler v. Kay*, 120 Ga. App. 758 (172 SE2d 202) (1969). See also *Rainer v. Security Bank &c. Co.*, 182 Ga. App. 171, 172 (2) (354 SE2d 882) (1987). It follows that to the extent OCGA § 10-7-24 provides for the discharge of a guarantor based on the failure of the creditor to commence an action against the principal, it is inconsistent with OCGA § 11-3-416 (1).

2. In *Pine Timber Co. v. Anthony*, supra, this court sustained an award of summary judgment to a defendant being sued upon a guaranty which he had executed "on a note," holding that he was discharged under OCGA § 10-7-24 as the result of the plaintiff's failure to proceed against the maker within three months after being notified in writing to do so. In rejecting the plaintiff's contention that OCGA §

---

[2] That Code section provides, in pertinent part, as follows: "(1) Any writing to be a negotiable instrument within this article must: (a) Be signed by the maker or drawer; and (b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this article; and (c) Be payable on demand or at a definite time; and (d) Be payable to order or to bearer."

[3] Under OCGA § 11-3-416 (2), the words " '[c]ollection guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, *or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him*." (Emphasis supplied.)

Because it is apparent without dispute that Atlanta Devlin, Inc., is insolvent, the appellants would thus have been entitled to proceed directly against the appellants even had they guaranteed collection rather than payment.

10-7-24 had been "superseded by statutes derived from the Uniform Commercial Code and codified in OCGA Title 11," the court indicated that there was "nothing in the Official Code of Georgia Annotated . . . which would support [this] position." Id., 191 Ga. App. at 376. However, OCGA § 10-7-27 specifically provides that "Code Sections 10-7-20 through 10-7-26 shall be superseded to the extent of any conflict by the provisions of Article 3 of Title 11, the 'Uniform Commercial Code — Commercial Paper,' relating to the discharge of any party to a negotiable instrument." Moreover, any conflict between OCGA § 10-7-27 and the Uniform Commercial Code would, in any event, be controlled by the UCC "as the later expression of the legislature. . . ." *Mitchell v. Ringson,* supra at 89. Accord *Sewell v. Akins,* 147 Ga. App. 454, 455 (3) (A) (249 SE2d 274) (1978). Thus, to the extent that *Pine Timber Co. v. Anthony* (or any other decision of this court) may be read as authority for the proposition that OCGA § 10-7-27 applies to guaranty agreements governed by the UCC, it is hereby overruled.

3. It is well settled that "Article 3 does not govern guaranties which are not ancillary to notes or other actionable negotiable instruments." *Fidelity Nat. Bank v. Reid,* 180 Ga. App. 428, 430 (348 SE2d 913) (1986). Thus, we have held OCGA § 11-3-416 to be inapplicable to guaranty agreements pertaining to leases, *Ford Motor Credit Co. v. Sullivan,* 170 Ga. App. 718 (2) (318 SE2d 188) (1984), nonnegotiable notes, *Yarbrough v. Magbee Bros. Lumber &c. Co.,* 189 Ga. App. 299 (2), 302 (375 SE2d 471) (1988), and open accounts, *Cities Svc. Oil Co. v. Collins,* 121 Ga. App. 38 (172 SE2d 653) (1970); *Panasonic Indus. Co. v. Hall,* 197 Ga. App. 860, 861, fn. 1 (399 SE2d 733) (1990).

It does not follow, however, that Article 3 *does* govern all guaranties which *are* "ancillary to notes or other actionable negotiable instruments." In *Smith v. Singleton,* 124 Ga. App. 394 (2) (184 SE2d 26) (1971), this court stated that "[OCGA § 11-3-416] purporting to define the contract of a guarantor, is, by its express language, confined to situations where some writing appears on the instrument to disclose a contract of guaranty. 'It states the commercial understanding as to the meaning and effect of *words of guaranty added to a signature.'* (Emphasis supplied.) UCC, 1962 Official Text with Comments, The American Law Institute and National Conference of Commissioner on Uniform State Laws, p. 310." Appellate courts in other jurisdictions have employed similar language in analyzing the scope of UCC § 3-416. For example, in *Uniwest Mtg. Co. v. Dadecor Condominiums,* 877 F2d 431, 434 (5th Cir. 1989), the United States Court of Appeals for the Fifth Circuit stated: "A separate guaranty agreement does not fall within the ambit of the Uniform Commercial Code. . . . 'UCC § 3-416 is applicable only to guaranties written on commercial paper that come within the scope of Article 3.' Anderson, Uniform

Comm. Code § 3-416:4 p. 373 (3rd ed.). . . . The UCC Rule is apparently intended to promote the free negotiability of the promissory note. If the guaranty is included within the four corners of the negotiable instrument itself, then whoever receives the negotiable instrument in the stream of commerce immediately becomes aware of a guarantor's existence." (Indentation omitted.) See also *Fewox v. Tallahassee Bank &c. Co.*, 249 S2d 55 (Fla. App. 1971); *Simpson v. Milne*, 677 P2d 365 (Colo. App. 1983); *Univ. Bank &c. Co. v. Dunton*, 655 F2d 23 (1981); *Crown Life Ins. Co. v. LaBonte*, 330 NW2d 201 (Wis. 1983).

Although such language provides general support for the proposition that UCC § 3-416 applies only to guaranties appearing on the face instrument itself, we are aware of no case from any jurisdiction in which a guaranty which (1) was executed contemporaneously with a negotiable instrument, (2) was affixed thereto, and (3) applied exclusively to the obligation evidenced thereby was held to fall outside the ambit of the UCC merely because it was written on a separate sheet of paper. Rather, in those cases where a guaranty pertaining to a negotiable instrument has been held to fall outside the ambit of Article 3 of the UCC, the agreement creating it has truly been separate from the instrument itself, often encompassing other obligations or future extensions of credit. See, e.g., *Uniwest Mtg. Co. v. Dadecor Condominiums*, supra; *Fewox v. Tallahassee Bank &c. Co.*, supra; *Simpson v. Milne*, supra.

In the present case, appellants Gunter and Scott (the only surviving signatories to the guaranty agreement) both agreed during their depositions to the characterization of that document as "page four" of a four-page promissory note. Pretermitting whether a different result would obtain otherwise, we conclude that under these circumstances, at least, the guaranty must be considered part and parcel of the note itself. Accordingly, we hold that the agreement was governed by OCGA § 11-3-416 (1), with the result that the appellants were not discharged by the appellee's failure to proceed against the insolvent maker.

*Judgment affirmed. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Carley, P. J., Pope, Beasley, Cooper and Andrews, JJ., concur.*

DECIDED FEBRUARY 19, 1992 —
RECONSIDERATION DENIED MARCH 12, 1992 —

*Kearns & Reeves, Charles F. Reeves, Schreeder, Wheeler & Flint, Timothy C. Batten*, for appellants.
*Lawrence K. Poole*, for appellee.