Leonard CUSIMANO, Appellant,

v.

FIRST MARYLAND SAVINGS AND LOAN, INC., Appellee.

David E. WILSON and 5524 8th Street, N.W., Development Corporation, Appellants,

v.

FIRST MARYLAND SAVINGS & LOAN, INC., Appellee.

Nos. 91–CV–1440, 91–CV–1442.

District of Columbia Court of Appeals.

Argued April 21, 1993.

Decided March 15, 1994.

common law doctrine enunciated in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

Kenneth J. Loewinger, Washington, DC, for appellant Cusimano.

Frederick Harrison Collins, Washington, DC, for appellants Wilson and 5524 8th Street, N.W., Development Corp.

Joseph M. Cahill, Washington, DC, for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

These appeals arise from orders granting the motions of appellee, First Maryland Savings and Loan, Inc. ("FMSL"), for summary judgment and directing appellants Leonard Cusimano and David E. Wilson, as personal guarantors, to pay a deficiency judgment in an action upon a promissory note, following foreclosure on certain property located at 5524 8th Street, N.W., in Washington, D.C. The foreclosed property served as collateral for a promissory note that evidenced, FMSL asserted, that appellants Wilson and Cusima-

no guaranteed FMSL, holder of the promissory note, payment of the principal sum of $650,000, together with accrued interest.

Appellants argue that in granting summary judgment to FMSL, the trial court erred because it refused to consider parol evidence regarding the term of the note. Cusimano additionally argues that the trial court made the same error regarding his status as guarantor, and that the trial court lacked personal jurisdiction to hear the case. We agree that no issue of material fact remained with respect to either the actual term of the note or liability on the note, and that FMSL was entitled to summary judgment. We also reject Cusimano's belated assertion that the trial court lacked personal jurisdiction over him. Accordingly, we affirm.

## I.

Appellee, FMSL, issued a loan in the amount of $650,000 to intervenor 5524 8th Street, N.W., Development Corporation ("Development Corporation"), as borrower, at the request of the owner of the stock of Development Corporation, Wilson. Wilson had purchased from Cusimano 100% of the stock of Development Corporation, holder of title to the property, a twenty-unit apartment building located at 5524 8th Street, N.W.

Wilson applied to FMSL for a loan to enable Development Corporation to develop that property. Wilson planned to convert the property to condominiums and resell individual units within five years. FMSL was not familiar with Wilson, but had previously transacted business with Cusimano. For that reason, FMSL required a guaranty from Cusimano as well as from Wilson on the loan Wilson requested. In August of 1983, as part of the loan transaction at issue, FMSL issued a commitment letter to Development Corporation in the amount of $650,000, which was received by Wilson and Cusimano. The letter required guarantees by both Wilson

and Cusimano. On September 29, 1983, Development Corporation entered into a deed of trust security agreement with the property as collateral for the loan. Development Corporation was the promisor on the note, which was executed by Wilson as its President and Cusimano as its Vice President.

The parties are at odds over the term of the loan. FMSL contends, and the trial court found it undisputed, that the term was for three years. Wilson and Cusimano, however, contend that the term was for five years.[1] The commitment letter, as drafted by FMSL and sent to Wilson and Cusimano, as well as the other loan documents, called for payment in full at the end of a three-year term. Wilson states that he struck out the words "three years" in the description of the terms of the commitment letter before signing it, and wrote in "five years" in accordance with conversations with an FMSL employee. Although Wilson initialed this change in term, the change was not initialed by any representative of FMSL or by Cusimano. To the contrary, the final executed version of the commitment letter shows that this change was struck and "three years" reinserted by FMSL.

The loan transaction was evidenced by four documents: (1) the commitment letter dated August 30, 1983; (2) the promissory note dated September 29, 1983; (3) the deed of trust dated September 29, 1983; and (4) the unconditional guarantee dated September 29, 1983. All four were signed by both Cusimano and Wilson. Appellants contend that the commitment letter is paramount among these documents, and point out that the deed of trust provides that "any inconsistencies between the ... loan commitment, the deed of trust, and any other instruments prepared pursuant to the said Loan Commitment, shall be determined by the terms and conditions of the Loan Commitment." At the settlement on September 29, 1983, Wilson and Cusimano

1. FMSL did not sue Development Corporation, and obtained no judgment against it. Although Development Corporation joined Wilson's notice of appeal, it did not make its pleading or intervention motion part of the record.

It appears from other parts of the record that Development Corporation was granted leave to intervene as a counterclaimant against FMSL, and filed such a counterclaim. The brief filed by Wilson and Development Corporation does not set forth any arguments that deal expressly with the dismissal of Development Corporation's counterclaim. Development Corporation takes the same position as Wilson and Cusimano regarding the asserted five-year term of the note.

signed the last three documents identified above, all of which indicated a term of three years. Wilson avers in his affidavit that he telephoned an employee of FMSL during the settlement, expressed his concern about the term, and was advised to sign the documents as prepared since there would be no problem in extending the loan. Wilson acknowledges, however, that no specific terms of such an extension had been discussed and no writing evidenced an agreement by FMSL to extend the term of the loan.

In July of 1986, Wilson, on behalf of Development Corporation, wrote to FMSL requesting an extension of the term of the loan. During this same period, a receiver was appointed by the Circuit Court for Montgomery County, Maryland, to liquidate FMSL.[2] In late October of 1986, and again in late February of 1987, FMSL advised Wilson by letter that the note had matured on October 1, 1986. Negotiations for refinancing were attempted but, when no agreement was reached, FMSL brought foreclosure proceedings in the Superior Court against Wilson and Cusimano pursuant to the terms of the deed of trust.[3] Wilson and Cusimano filed counterclaims against FMSL seeking damages for breach of contract, wrongful foreclosure, breach of fiduciary duty, and interference with prospective economic advantage. Subsequently, Development Corporation intervened as a counterclaimant against FMSL. The foreclosure auction was scheduled for October 1, 1987, at 1:00 p.m. On that same date, but prior to the scheduled sale, Development Corporation filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Columbia, thereby delaying the sale.

FMSL additionally brought suit against appellants in the Circuit Court for Prince George's County, Maryland, to collect from them as personal guarantors of the note. The Maryland court dismissed the suit because of the forum selection clause in the unconditional guaranty through which the parties had agreed that courts located in the District of Columbia would have jurisdiction over any proceeding to enforce the guaranty, and that the law of the District of Columbia would control. Following this dismissal, FMSL renewed its motion in the bankruptcy proceedings for relief from the automatic stay[4] so that it could foreclose on the property. In July of 1988, the United States Bankruptcy Court granted FMSL's request for relief, permitting it to foreclose its deed of trust on 5524 8th Street, N.W. In response, Development Corporation brought an action in the United States District Court for the District of Columbia requesting a stay of the foreclosure sale. That court granted a stay of the foreclosure sale conditioned upon the posting of a supersedeas bond by September 26, 1988. As Development Corporation failed to post the bond, and the parties were unable to reach a compromise settlement, the property was sold at public auction on November 26, 1988, to FMSL for $500,000, resulting in a deficiency balance of $289,848.62 as of mid-November, 1988.

On May 1, 1991, the trial court granted FMSL's motion for summary judgment and dismissed appellants' counterclaim and intervenor Development Corporation's counterclaim. On November 12, 1991, the trial court entered a deficiency judgment for FMSL against Wilson and Cusimano, jointly and severally, in the sum of $365,911.35 with interest at 13% per annum from August 1, 1991. These appeals followed.

## II.

### A. Cusimano's Personal Guaranty of the Loan.

Cusimano contends that the trial court erred in granting summary judgment to FMSL because a genuine issue of material fact remains as to whether Cusimano was merely "secondarily" liable, guaranteeing only collection on the note, or was instead a guarantor of payment. He maintains that his obligation should be deemed discharged

---

**2.** *On June 19, 1986,* the State of Maryland Deposit Insurance Fund Corporation was appointed as the receiver for FMSL.

**3.** The deed of trust provides that upon default of payment the trustee or the beneficiary may sell the property at a public auction.

**4.** *See* 11 U.S.C. § 362(a) (1993).

since, he asserts, FMSL did not exercise due diligence in first pursuing Wilson as primary guarantor. Cusimano also contends that the trial court lacked *in personam* jurisdiction over the appellants. We find these arguments unpersuasive.[5]

The promissory note was a negotiable instrument and subject to the provisions of Article 3 of the Uniform Commercial Code (U.C.C.), D.C.Code § 28:3–101 to –805 (1991 Repl.). Like Wilson, Cusimano signed the promissory note, which read in part: "WE, the undersigned, do hereby personally guaranteed [sic] the due payment of the within indebtedness." Under D.C.Code § 28:3–416(1) (1991 Repl.),[6] " 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." On the other hand, "[c]ollection guaranteed,"

> or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him.

D.C.Code § 28:3–416(2) (1991 Repl.).

Cusimano argues that, in the context of the foregoing provisions, he signed only as a guarantor of collection. We examine his position first by addressing the language of the guarantee contained in the promissory note, and then by viewing it in the context of the four interrelated loan documents, bearing in mind the above-quoted provision of the deed of trust that the terms of the commitment

letter resolve any inconsistency among the loan documents.

■ Turning to the guarantee signed by Cusimano on the note itself, "WE, the undersigned, do hereby personally guaranteed [sic] the due payment of the within indebtedness," its language is such that if it controls the outcome of this case, it is clear beyond question that the trial court was correct in concluding that under the provisions of D.C.Code § 28:3–416(1)–(3) (1991 Repl.) Cusimano guaranteed payment rather than collection.

■ This result is required by D.C.Code § 28:3–416(3), which provides: "[w]ords of guaranty which do not otherwise specify guarantee payment." This language means that even if the words of the guaranty are ambiguous and "do not show whether payment, as opposed to collection, is guaranteed, the Code declares as a matter of law that the guaranty is one of payment." 6 RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE § 3–416:27, at 815 (3d ed.1993) (footnote omitted). In order for a guaranty to be one of collection, it must set forth with clear and unambiguous language the indication that the guarantor becomes liable only after the holder has reduced his or her claim against the primary guarantor to judgment, and after execution has been returned unsatisfied, or when it would be futile to pursue the primary guarantor. *See* D.C.Code § 28:3–416(2) (1991 Repl.).

In short, the strong policy of § 28:3–416(3) of construing even ambiguous guaranties as guaranties of payment rather than of collection must certainly mandate the conclusion that the language of this guaranty obligates Cusimano as a guarantor of payment. We also observe, however, that even in the absence of this subsection's strong policy in favor of construing ambiguous guarantees to

---

**5.** Cusimano's argument that the trial court lacked the power to exercise *in personam* jurisdiction over appellants is clearly without merit. We note that the issue of personal jurisdiction over Cusimano was never raised in the trial court. Cusimano's defense of lack of personal jurisdiction was waived if it was neither raised by motion nor included in a responsive pleading. Super.Ct.Civ.R. 12(h)(1); *Snyder v. Laboy,* 291 A.2d 194, 196–97 (D.C.1972). Moreover, Cusimano admitted in his answer to FMSL's com-

plaint that jurisdiction of the Superior Court was founded on D.C.Code § 13–423 (1989 Repl.) (the "long-arm" statute). We therefore reject Cusimano's jurisdictional argument.

**6.** Prior to the 1990 revisions to Article 3 of the U.C.C., the provisions of U.C.C. § 3–416(1)–(3) (1977) were identical to the provisions of D.C.Code § 28:3–416(1)–(3) (1991 Repl.).

guarantee payment, the note's use of the words "guarantee" and "payment" bring its guaranty provision squarely within the provisions of § 28:3–416(1) ("Payment guaranteed") unless other language of the guaranty requires a different result. There is no such other language. The use of the word "due" itself implies that the bank could look to the guarantors when payment was overdue rather than seek a deficiency judgment after foreclosure. To bring the guaranty provision within the ambit of § 28:3–416(2) ("Collection guaranteed"), Cusimano was required to use indicative terminology, such as the word "collection" or a similar word like "loss." *See Wolfe v. Schuster,* 591 S.W.2d 926, 930 (Tex. Civ.App.1979) (guaranty construed as one for collection where provision states "guarantees the collection of all amounts to become due" and refers to the obligation to pay "amounts uncollected"); *Floor v. Melvin,* 5 Ill.App.3d 463, 464–66, 283 N.E.2d 303, 304–305 (1972) (guarantee for collection where provision states "irrevocably guarantee ... against loss by reason of non-payment of this note"). One can conclude only that the language actually used in the note's guaranty clause is precisely the sort of language that § 28:3–416(1) indicates should be used to create a guarantee of payment.

■ Cusimano also argues, however, that even if the note should be construed to make him a guarantor of payment, that reading is overcome by inconsistent language of the commitment letter which, according to the deed of trust, controls in case of inconsistency. Before examining the language of the commitment letter, we will consider whether the provisions of D.C.Code § 28:3–416 (or Article 3 of the U.C.C. generally) apply only to the promissory note itself or apply as well to the commitment letter and the other interrelated loan documents. Our answer will determine the outcome of this aspect of the appeal.

By its terms, D.C.Code § 28:3–416(1) and (2) applies to words "added to a signature," referring to the signature on the negotiable instrument in question. *See Eikel v. Bristow Corp.,* 529 S.W.2d 795, 800 (Tex.Civ.App. 1975) (limited guaranty entered separately from note not governed by § 3–416 of U.C.C.); 6 RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE § 3–416:5, at 794–95 ("[t]he Code does not regulate separate guaranty of agreements which are not part of a signature on commercial paper"); *cf. Fewox v. Tallahassee Bank & Trust Co.,* 249 So.2d 55, 56–57 (Fla.Dist.Ct.App.1971) (although U.C.C. § 3–119(1) provided that commercial paper may be affected by any other written agreement executed as part of the same transaction, doubtful that guarantee not between same obligor and obligee qualifies as "other written agreement").

■ Although the foregoing principles are broadly applicable, and certainly govern separate or independent guaranties, the prevailing view is that § 28:3–416 is applicable to guaranties that are ancillary to the instrument in question, and part of the same transaction. In *Fidelity Nat'l Bank v. Reid,* 180 Ga.App. 428, 348 S.E.2d 913, 915 (1986), the court stated, "[n]ormally, a guaranty executed ancillary to a note is governed by Article 3 of the Uniform Commercial Code, the applicable law of negotiable instruments."[7] In *Gunter v. True,* 203 Ga.App. 330, 416 S.E.2d 768, 771 (1992) (citations omitted), the court stated:

> [W]e are aware of no case from any jurisdiction in which a guaranty which (1) was executed contemporaneously with a negotiable instrument, (2) was affixed thereto, and (3) applied exclusively to the obligation evidenced thereby was held to fall outside the ambit of the UCC merely because it was written on a separate sheet of paper. Rather, in those cases where a guaranty pertaining to a negotiable instrument has been held to fall outside the ambit of Arti-

7. The court went on to hold, however, that under the circumstances before it, Article 3 of the U.C.C. did not govern. It stated that after the original note is paid, such a guaranty—if broad enough in its language to refer to subsequent notes—takes on the nature of an inchoately enforceable contract and is not controlled by Arti-

cle 3 until a subsequently executed note again "breathe[s] life back into the guaranty." *Fidelity Nat'l Bank, supra,* 348 S.E.2d at 915. Thus, the court held, the guaranty could be rescinded orally during the interim notwithstanding the contrary provisions of Article 3.

cle 3 of the UCC, the agreement creating it has truly been separate from the instrument itself, often encompassing other obligations or future extensions of credit.

In determining whether a guaranty is ancillary to an instrument governed by Article 3, courts in other jurisdictions look to evidence of whether the guaranty was executed as, in essence, a part of the instrument. If the guaranty relates exclusively to the instrument, that fact strongly indicates that such is the case. *See id.* Courts have also looked to see if both agreements were "integral parts" of the transaction embodied in the instrument, *see Commerce Bank of St. Louis, N.A. v. Wright,* 645 S.W.2d 17, 20–21 (Mo.Ct.App. 1982), or if the agreements were executed contemporaneously, *id.* at 21; *Gunter, supra,* 416 S.E.2d at 771, or "in simultaneous contemplation." *Tresslar Co., Inc. v. Fritts,* 665 S.W.2d 314, 316 (Ky.Ct.App.1984); *see Wolfe v. Madison Nat'l Bank,* 30 Md.App. 525, 352 A.2d 914, 915 (1976) (guaranty executed five days prior to promissory note).

Those cases finding that a guaranty pertaining to a negotiable instrument falls outside the ambit of Article 3 usually concern agreements which are "truly separate" from the instruments themselves. *See Gunter, supra,* 416 S.E.2d at 771. In such cases, the guaranty at issue continued after the term of the transaction embodied by the negotiable instrument or contained terms beyond the scope of the instrument. *See Federal Deposit Ins. Corp. v. Nobles,* 901 F.2d 477, 478 (5th Cir.1990) (continuing guaranty); *Uniwest Mortgage Co. v. Dadecor Condominiums, Inc.,* 877 F.2d 431, 434 (5th Cir.1989) (guaranty of both present loan and all future indebtedness unconnected with loan at issue); *Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 104–106 (Tex.Ct.App.1987) (multiple loans secured by single guaranty); *Fidelity Nat'l Bank, supra,* 348 S.E.2d at 915 (when

promissory note paid off, continuing guaranty became "simply an inchoately enforceable contract subject to a condition precedent, with no rights arising until Fidelity made another loan to A–1"); *Simpson v. Milne,* 677 P.2d 365, 369 (Colo.Ct.App.1983) (guaranty referred to all debts "now or hereafter made, incurred, or created").

In the instant case, the loan commitment letter relates exclusively to the promissory note. Its terms are those of the promissory note, and it contains no additional terms, binding the guarantors only to the loan negotiated in the promissory note. Although the loan commitment letter was executed a month before the promissory note, it was created in contemplation of the promissory note and for no other purpose. Its terms were to terminate when the promissory note terminated. The deed of trust executed simultaneously with the promissory note referred to the loan commitment letter, along with the note and "any other instrument prepared pursuant to the Loan Commitment," clearly evidencing the parties' understanding that all three documents and the contemporaneous unconditional loan guarantee were part of the same transaction.

Finally, the fact that words of guaranty are found not only in the commitment letter, but in the promissory note itself and in another contemporaneous document, the unconditional loan guarantee, is further indication that the guaranty set forth in the commitment letter is not "truly separate" from the instrument. *See Gunter, supra,* 416 S.E.2d at 771.[8]

We are satisfied that, under the circumstances, the commitment letter was so closely interrelated with the promissory note, the deed of trust, and the unconditional guarantee that all are governed by the provisions of Article 3 of the U.C.C. In the sense in which the term "ancillary" was used in *Fidelity Nat'l Bank, supra,* 348 S.E.2d at 915, the

---

**8.** We do not deem to the contrary the holding in *Crown Life Ins. Co. v. LaBonte,* 111 Wis.2d 26, 330 N.W.2d 201 (1983). There the court found that a guaranty was a separate document for the purposes of § 3–606 of the U.C.C. (allowing a suretyship defense for parties to an instrument) because the parties signed the note in their official capacities and the guaranty in their individual capacities, as in the present case. However, *Crown Life* concerns a provision of Article 3

which allows a release from liability for parties to an instrument, and therefore focused on who was considered a party to the instrument. In that case, it was appropriate to distinguish between the parties acting in their individual and official capacities because the issue was which parties are provided a defense under Article 3, not whether a document is subject to interpretation under its provisions.

commitment letter was ancillary to the promissory note.[9]

The applicability of § 28:3–416 to the commitment letter is fatal to Cusimano's position. Regarding a guaranty, the letter reads: "First guaranty by David E. Wilson and secondly by Leonard Cusimano." The most Cusimano could argue is that the language of guaranty is ambiguous; but under § 28:3–416(3) that would make it a guaranty of payment rather than of collection, thus requiring summary judgment in favor of FMSL.

Although it may seem counter-intuitive to conclude that summary judgment is appropriate where there is ambiguity, that is the result under § 28:3–416(3). In effect, that section creates a guarantee of payment, rather than collection, where the language of the guaranty clause is unclear. Where the non-movant's burden in resisting summary judgment is typically to generate some ambiguity in an effort to defeat the motion, that is precisely what Cusimano could not do in the face of the language of § 28:3–416. He must show that the clause unambiguously set up a guaranty of collection. Because he cannot do so, his opposition to summary judgment on this basis fails.

■ We also note that since, in light of the pertinent provisions of D.C.Code § 28:3–416, the language of the guaranty between FMSL, Cusimano, and Wilson is unambiguous, parol evidence to add to, contradict, or explain its terms, or to show the intention of the parties is inadmissible.[10] *See Stamenich v. Markovic*, 462 A.2d 452, 455 (D.C.1983).

The trial court concluded, and we agree, that the guaranty executed by both Cusimano and Wilson was their unconditional, joint, and several guaranty to FMSL that the payment of the principal and interest would be made by them according to the terms of the note. Accordingly, Cusimano was a guarantor for payment.

**B. Term of the Note.**

■ Wilson, joined by Development Corporation and Cusimano, contends that a genuine issue of material fact exists as to the term of the note.[11] Appellants argue that the note was not due and payable until the passage of five years after the date of its execution, i.e., that the term of the note was for five years. FMSL contends that the note had a three-year term as stated in the note itself and the commitment letter. The trial court found it undisputed by any evidence that the note was for three years, rather than for five years. Specifically, the trial court concluded that Wilson's unilateral modification of the commitment letter in crossing out the word "three" and above it writing and initialing the word "five," was, in contemplation of law, nothing more than a counter-offer made by Wilson but ultimately rejected by FMSL. The trial court determined that the commitment letter constituted an offer

9. As we have stated, the deed of trust stated that the language of the commitment letter controlled in the case of inconsistency between the documents. Nevertheless, the promissory note was the principal operative document. The other three documents, including the commitment letter, are subsidiary to it and would have been without effect in its absence. Thus, we regard them as ancillary documents.

10. Although not necessary to our decision, we note that the unconditional loan guarantee, signed on the same day as the note, made it abundantly clear that the parties intended that the guaranty be of payment. It stated:

If Borrower shall fail to make any payment of any sum due under the Note or Deed of Trust, or if the Borrower shall default in any term, covenant or condition of the loan documents, then the undersigned hereby unconditionally jointly and severally guarantee to the holder of the Note that the undersigned shall (without first requiring the holder of the Note to proceed against Borrower, or any other

security), (1) pay to the holder of the Note the entire unpaid balance with interest and costs, including all sums secured by said Deed of Trust, (2) cure any default in any term, covenant or condition of the loan documents, ...

The undersigned agree that this Guaranty may be enforced by the holder of the Note without the necessity at any time of resorting to or exhausting any other security or collateral and without the necessity at any time of having recourse to the Note or any of the property covered by the Deed of Trust through foreclosure proceedings or otherwise.

11. Wilson and Development Corporation also assert that the trial court erred in ruling that a bankruptcy court order lifting a stay of foreclosure legally precluded them from arguing that the note, after three years, was not in default. Because we agree with the trial court that the note had a three-year term and thus appellants were in default, we need not reach this issue.

(by FMSL for three years), that Wilson's insertion of "five years" constituted a counter-offer, and that FMSL's re-insertion of "three years" constituted its rejection of the counter-offer.

No document signed by the bank committed the bank to anything other than a three-year term. The final version of the commitment letter, signed by Wilson and Cusimano and submitted into evidence by FMSL,[12] demonstrates that FMSL had crossed out Wilson's handwritten "five" and inserted and initialed "three," indicating that Wilson's counter-offer had been rejected. Further, the fact that appellants signed all of the other documents setting forth the three-year term at settlement indicates their acceptance of the three-year term that each of these documents expressed.

▇ Appellants further contend that, although the note plainly states the term as three years, the note should be read in conjunction with the commitment letter as Wilson would have revised it, and with alleged oral statements made on behalf of FMSL assuring Wilson that a five-year term could be substituted for the three-year term.[13] In his affidavit, Wilson states that an FMSL employee, Donald Hupp, advised him to modify the commitment letter by hand, initial the change, and return the letter to FMSL. Later, at the settlement, Wilson asserts, he telephoned Mr. Hupp, who told him to sign the documents because the loan could later be extended from three to five years. Since the final and fully executed version of the commitment letter and the note both refer to a term of three years, the loan documents were not ambiguous, and therefore parol evidence tending to contradict or vary the terms must be excluded. *See Stamenich, supra,* 462 A.2d at 455. The note unambiguously states that payment would be due in full on October 1, 1986. It is well-settled that a note

must be paid according to its terms and cannot be altered by contradictory contemporaneous oral agreements. *See id.; Brown v. Spofford,* 95 U.S. 474, 482, 24 L.Ed. 508 (1877) (parol evidence of an agreement made contemporaneously with a promissory note containing an absolute promise to pay at a specified time is not admissible to extend the time for payment); *cf. Bolle v. Hume,* 619 A.2d 1192, 1196 (D.C.1993) (per curiam) (extraneous correspondence not admissible regarding interpretation of merged agreement). Therefore, we conclude that appellants fail to demonstrate that a genuine issue of material fact exists as to the term of the note.

Accordingly, the grant of summary judgment to FMSL is

*Affirmed.*

---

12. Wilson's and Development Corporation's version of the commitment letter, attached to their brief on appeal, included a copy of the letter displaying Wilson's handwritten edit of "five years" above the typewritten words "three years." This version did not contain Cusimano's signature.

13. The trial court concluded that if there was an oral agreement to "roll over" the note at the end of three years, such an agreement, not being in writing, would not meet the requirements of the

Statute of Frauds, D.C.Code § 28–3502 (1991 Repl.), and is accordingly unenforceable. Further, the trial court noted the contract could not have been performed within one year, a fact which would make it subject to the Statute of Frauds. *See Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C.1985) (citing *Snyder v. Hillegeist,* 100 U.S.App.D.C. 368, 370, 246 F.2d 649, 651 (1957)). Appellant's briefs raised no challenge to these rulings.