Because I would hold that Appellant's properly filed claim was not plainly and unequivocally rejected by Appellee, I must respectfully dissent.
As the majority correctly points out, it is undisputed that Appellant properly presented a claim against decedent's estate, on August 25, 1997, and that the present action was commenced on January 21, 1999. What is in dispute is whether the August 4, 1997, letter written by counsel for the Administratrix of decedent's estate operated as a valid rejection of the properly submitted claim.
The majority properly cites Hawkes Hospital v. Colley (1982),2 Ohio St.3d 40, for the standard used to determine whether a letter is a valid rejection sufficient to trigger the two month statute of limitations provided in R.C. § 2117.13. In Hawkes, the Ohio Supreme Court stated as follows:
 It is well established in Ohio that notice of disallowance of a creditor's claim against an estate by a fiduciary must be plain and unequivocal. As this court stated in Miller v. Ewing (1903), 68 Ohio St. 176, 186: `We readily assent to the proposition that in order to avail in starting the six months' clause to running, the rejection must be plain and unequivocal. If it is simply argumentative and uncertain; * * * or, if, as held in Hoyt v. Binnett, 50 N.Y., 538, at the time of the alleged rejection, the administrator does or says anything from which the claimant may reasonably infer that the determination to dispute or reject the claim is not final, but that it will be further examined or considered, the administrator may not set up such a dispute as a rejection.' (Emphasis added).
The majority then engages in an analysis of Colley. More specifically, the majority considers the content of the alleged rejection letter at issue before the Ohio Supreme Court. When apparently analogizing the alleged rejection letter in Colley with that at issue in the case sub judice, the majority makes the following sweeping and unsupported conclusions:
 In the present case, the concluding remark of the letter of August 4, 1997, states, in pertinent part, that "the estate is unable to comply with your request." There is nothing in the matter from which the claimant could reasonably infer that the determination to dispute or reject the claim is not final or that it will be further examined or considered, as was the case in Colley. Therefore, we cannot in good conscience say that the language of the letter is susceptible of more than one interpretation. * * *
With such conclusions I strongly disagree. That is, when ingenuously considering Ohio Supreme Court precedent and other relevant case law, the majority cannot in good conscience hold that language of the letter, placed in the appropriate context, is susceptible to only one interpretation.
The majority relies exclusively on Colley to support their determination that the letter at issue herein was a plain and unequivocal rejection of the claim. The alleged rejection letter at issue before the Colley Court stated in relevant part as follows:
 This is to inform you that an Application for Instruction, a copy of which has been filed with the Probate Court and that the matter has been set for hearing July 5, 1979 at 10:00 A.M.
* * *
 Also be informed that your claim against the Estate of Mr. Anderson has been rejected by the Executor for the reason that it was not properly or timely filed.
The majority properly recognizes that the Ohio Supreme Court concluded that in the first paragraph of the letter, appellee therein was referring the claim to the court for determination and hence his claim was being further considered. The majority also properly recognizes that with respect to the final paragraph, the Court reasoned that appellant therein was rejecting the claim because it had not been timely filed.
Clearly the Colley Court read the pertinent portions of the rejection letter therein within the context of the entire letter; an approach the majority fails to do in concluding in the case subjudice that the letter was a valid rejection. I would likely agree with the conclusion reached by the majority if the alleged rejection letter herein consisted solely of the "concluding remark" upon which the majority places so much importance. That is, if the letter stated in its entirety "the estate is unable to comply with your request," then perhaps that would be sufficiently plain and unequivocal to constitute a valid rejection. However, the majority fails to read this "concluding remark" in the proper context.
Had the Colley Court elected to adopt the approach advanced by the majority today, the portion of the Colley letter stating, "be informed that your claim against the Estate has been rejected by the Executor for the reason that it was not properly or timely filed," would be sufficient to conclude that the letter was an unequivocal and plain rejection of the claim. An otherwise unmistakably inconsistent, ambiguous and equivocal letter would become a valid plain and unequivocal rejection under the approach adopted by the majority. Fortunately, the Supreme Court of Ohio has elected to adopt a standard that requires a reviewing court to consider the alleged rejection within the context in which it is given.
Were we left with only Colley upon which to base a decision in the case sub judice, I would have little difficulty in concluding that the letter was not a plain and unequivocal rejection of the claim. That is, relying solely on the authority of Colley, I would hold in good conscience and as a matter of law that Appellee's letter dated August 4, 1997, was not a plain and unequivocal rejection of Appellee's claim. Because the alleged rejection letter was "[b]ased upon [a] preliminary review of the documents involved," the assertion that "Mutual must first
exhaust its remedies against the principal debtors," and because the "estate [was] unable to comply with [the] request" in light of the above, I would have no difficulty in concluding that the letter was at best argumentative and uncertain and reasonably suggestive of the possibility that the claim may be reevaluated at a later date. My conclusion is further supported when other instructive, relevant case law is considered, something the majority fails to do.
In Caldwell v. Brown (1996), 109 Ohio App.3d 609, decedent's ex-husband filed a claim with the administrator of his former spouses' estate. The letter therein asserted a claim against the estate of "Mary Caldwell." The only estate pending was that of "Barbara Caldwell." Counsel for the administrator of Barbara Caldwell's estate responded, in a letter dated October 8, 1993, by first noting the discrepancies in names and then by stating:
 Perhaps you would want to check with your client to determine the proper identity of the deceased, but in any event, on the Caldwell estate we are handling, and on behalf of the administratrix thereof, we would have to reject any claim made against the Estate of Mrs. Mary Caldwell.
The Second Appellate District read this letter in its proper context as arguably accomplishing one or two things: 1) rejecting the claim as to form because of the misnomer of the decedent; and/or, 2) rejecting the claim against the estate of Mary Caldwell. That the letter was susceptible to more than one interpretation led the Brown Court to the conclusion that the letter did not constitute a plan and unequivocal rejection of a claim against the estate of Barbara Caldwell.
In Martin v. Spellman (1939), 30 OLA 225, decedent's doctor submitted a claim to the administrator for $3,000.00 for medical services rendered to the decedent. The administrator responded to the doctor's claim as follows:
 * * * I am hereby rejecting the claim, first on the ground that the claim was paid and second on the ground that as an addition to the claim he made you a present of a Packard automobile.
 However, both of these may be subject to dispute and I am asking for your statement as to the matters. Second, I am refusing the claim on the ground that I have no way of determining the amount except by your statement and neither has the Court, as you have simply the items `including all special services, laboratory work and medicines.' If this is reformed, itemized, and placed in the proper manner, with all credits, etc., attached, I would be glad to take up the matter of the payment of the claim but in the form in which the claim now is, I am compelled to refuse it.
Thereafter, an itemized account was submitted by the doctor and promptly rejected by the administrator.
The Second District Court of Appeals held that the rejection by the administrator of a claim must be unequivocal in order to start the time running within which an action on the claim must be commenced. Further, the Court held that since the communication on the unitemized claim, although specifically stating that the particular form of claim was rejected, left the claimant with an opportunity to resubmit his claim in a different form for reconsideration, such communication read within its proper context did not constitute an unequivocal rejection.
In In Re. Estate of Douglas (1957), 77 OLA 89, appellantstherein submitted a claim in the amount of $130.50, plus interestthereon at 6 percent per annum, to the administrator of thedecedent's estate. Counsel for the administrator responded with aletter, of which relevant excerpts are as follows:
 Mr. Douglas, according to Mrs. Rodeffer, never spoke to this particular item of Kramer's work without becoming highly incensed, and since he, for almost four years refused to pay the claim, the administratrices feel that they too should deny the claim.
 If it is acceptable to your clients to settle this claim for $50.00, I will recommend that the administratrices pay that much in order to avoid litigation. Let me know what you decide.
The Preble County Probate Court found the first paragraph of theletter to be a rejection of the claim and the second paragraph tobe an equivocation in that it was an offer to settle the claim fora lesser amount. Being neither accepted nor rejected, the matterwas still open for negotiation.
In response to the properly filed claim in the case sub judice, counsel for the Administratrix sent the letter dated August 4, 1997. Whether one considers the August 4 letter by itself or analogizes the letter to those considered respectively by theColley, Brown, Spellman, and Douglas Courts the result is the same; the letter is not a plain and unequivocal rejection. This letter is susceptible to more than one interpretation. As the trial court concluded, the letter may be read as a rejection of Appellant's claim. The letter may also be read as indicating that Appellee would not consider paying the claim unless and until Appellant liquidated the equipment securing the debt. Further still, the letter may be read as indicating that the claim may be accepted after further consideration because the letter represented counsel's "preliminary" assessment of the documents; perhaps an indication of the willingness to negotiate. Finally, the letter may be read as indicating that the administrator intended to accept the claim if and when Appellant liquidated the equipment; an expression of a future intent to reject. The above discussion illustrates that the letter is subject to at least four reasonable interpretations. That the letter is reasonably susceptible to more than one interpretation confirms that it is not a plain and unequivocal rejection of the claim.
In good conscience, I would conclude that the text of the letter reasonably allows Appellant to infer that the determination of whether to accept or reject the claim was not final and the claim would be further examined or considered when and if the equipment securing the debt was liquidated. Appellant's claim being properly filed and neither rejected nor accepted, the matter is still pending. Therefore, I would hold that the two-month statute of limitations for bringing suit on a claim set forth in R.C. § 2117.12 has not yet started to run and I would grant Appellant-Plaintiff's motion for summary judgment to the extent that Appellant's claim is not time barred by operation of R.C. § 2117.12.
I pause here to comment that the majority erroneously attempts to bolster its decision that the letter was a valid rejection by concluding that because Appellant's own attorney, in his response letter dated August 25, 1997, indicates that he understood the claim had been "denied," it is apparent that the letter is susceptible to only one interpretation. The trial court also erroneously relied upon the letter from Appellant's attorney, as evidenced by its decision and Order/Entry:
 * * * In the last sentence of the letter, Attorney Gudorf clearly states, `the estate is unable to comply with you request.' * * * Mutual cannot now argue that the letter was not plain and unequivocal or that they did not understand the letter, because Mutual's own attorney, in his response letter, dated August 25, 1997, clearly indicated that he understood that the claim was denied, and he further indicated that Mutual would commence litigation on the matter. (Decision and Order/Entry, pg. 4.)
 First, I strongly disagree that Appellee's letter dated August4, 1997, was a plain and unequivocal rejection of Appellant'sclaim. Second, assuming arguendo that Appellant treated theAugust 4, 1997, letter as a "denial," such reaction does not makethe letter a "rejection" sufficient to satisfy the relevantstatutory requirements. Whether a letter operates as a plain andunequivocal rejection is not determined by how a creditor reactsto the communication, but, rather, is determined, inter alia, bythe text and context of the purported rejection letter itself. Ifthe communication by itself is not a valid rejection as a matterof law, that a party responds as if it were does not transform theinfirm rejection into an otherwise valid one.
The approach taken by the majority allows a court to determine as a matter of law whether a rejection is valid based upon facts occurring after the alleged rejection. The majority cites no cases supporting such a proposition and I am aware of no principle in Ohio law that would allow a court to engage in such an analysis. The result of this approach is that an otherwise invalid rejection may be held to be valid based in part or exclusively on how the claimant responds. That is, the validity of a rejection can now be measured by subsequent actions of the claimant instead of the actions of the party responsible for the rejection. Such an approach is in complete contradiction with the law established in Ohio.
Because I would hold that that Appellant's claim had been neither accepted not rejected by the Administratrix, it would be necessary to consider the result when a properly filed claim is neither rejected nor accepted within the time period prescribed by statute. The administrator or executor of an estate is required to either accept or reject a properly filed claim within thirty days after presentation. R.C. § 2117.06(D). Any person whose claim has been presented and not been rejected after presentment is a creditor as that term is used in Chapters 2113 to 2125 of the Revised Code. R.C. § 2117.06(H). If a creditor presents a claim against an estate in accordance with division (A)(2) of section 2117, the probate court shall not close the administration of the estate until that claim is allowed or rejected. R.C. § 2117.06(I). Division (A)(2) of section 2117 provides that a creditor having a claim against an estate, including claims arising out of a contract, on cognovit notes, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present the claim to the executor or administrator in a writing, and to the probate court by filing a copy of the writing with it. R.C. § 2117.06(A)(2). Further, all such claims must be presented within one year of the decedent's death. R.C. § 2117.06(B).
In the case sub judice, it is undisputed that Derwin Sanford died on June 28, 1997. It is also undisputed that on July 17, 1997, Appellant properly filed a claim with the Administratrix of decedent's estate and that a copy of the claim letter was filed with the probate court on that same day. Therefore, there is no dispute that the claim was presented within the time period prescribed by statute and that a copy of the claim was properly filed with the probate court. Consequently, pursuant to R.C.2117.16(I), until the claim was either rejected or accepted by the Administratrix, the probate court could not close the administration of the estate.
In further support of his first assignment of error, Appellant argues that the Court of Common Pleas erred by failing to determine that Plaintiff-Appellant presented an enforceable guaranty upon the estate of Defendant-Appellee. It is necessary then to determine whether there is an absence of a genuine issue of material fact concerning the assertion that Appellant possessed a valid and enforceable guaranty.
The "guaranty" alleged in the present case arises from a Promissory Note executed by Thomas Lindsey and Wilbur Lindsey Jr. and delivered to Appellant. The decedent, Derwin Stanford's, indorsement appears on the document. The promissory note at issue is a negotiable instrument and subject to the provisions of Article 3 of the Uniform Commercial Code (U.C.C.), which has been substantially codified in Ohio Rev. Code, Title 13.
An "indorsement" is defined as a signature, other than that of a signer as maker (see § 1303.01(A)(7)), drawer (see § 1303.01(A)(3)), or acceptor (see § 1303.01(A)(1)), that alone or accompanied by other words is made on an instrument for one or more of several enumerated reasons, including to incur the indorser's liability on the instrument. R.C. § 1303.24(A)(1)(c). An "anomalous indorsement" means an indorsement made by a person who is not the holder (see § 1301.01(T)(1)) of the instrument. R.C. § 1303.25. A person signing an instrument is presumed to be an "accommodation party," and there is notice that the instrument is signed for accommodation if the signature is an anomalous indorsement or is accompanied by words indicating that the signer is acting as surety or guarantor with respect to the obligation of another party to the instrument. R.C. § 1303.59(C). The rights and responsibilities of "accommodation parties" are provided in R.C. § 1303.59:
 (A) If an instrument is issued for value given for the benefit of a party of the instrument and another party to the instrument signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument the instrument is signed by the accommodation party "for accommodation."
 (B) An accommodation party may sign the instrument as maker, drawer, acceptor, or indorser and, subject to division (D) of this section, is obliged to pay the instrument in the capacity in which the accommodation party signs * * *
* * *
 (D) If the signature of a party to an instrument is accompanied by words indicating unambiguously that the party is guaranteeing collection rather than payment of the obligation of another party to the instrument, the signer is obliged to pay the amount due on the instrument to a person entitled to enforce the instrument only if one of the following applies:
 * * *
 (2) The other party is insolvent or in an insolvency proceeding.
 * * *
An analysis of the above sections of the Revised Code indicate that if an accommodation party (guarantor) signs an instrument and that signature is not accompanied by words indicatingunambiguously that the party is guaranteeing collection of the debt, the accommodation party (guarantor) is obliged to pay the instrument according to its terms when it was signed. Conversely, if the accommodation party's (guarantor's) signature is accompanied by words indicating unambiguously that the party is only guaranteeing collection of debt, the accommodation party is obliged to pay the amount due upon the occurrence of one of several enumerated events.
In the present case, decedent's signature appears on the bottom left hand portion of a Note dated September 22, 1995. In relevant part, the Note provides:
PERSONALLY GUARANTEED BY:
 X____________________________________________ DERWIN SANFORD
Decedent's signature appears in the space provided. Pursuant to R.C. § 1303.59(C), by signing the instrument, decedent is presumed to be an accommodation party. The question remains whether, as an accommodation party, decedent signed in that capacity as a maker, drawer, acceptor, or indorser. R.C. § 1303.59(B). It is clear from the record in this case that the only capacity implicated is that of indorser. What liability, if any, decedent incurred by signing the instrument as an accommodation party and in the capacity as an indorser must therefore be determined. In other terms, does the phrase "PERSONALLY GUARANTEED BY:" unambiguously indicate that the accommodation party (guarantor) is guaranteeing collection of the debt rather than guaranteeing payment of the debt?
I pause here to comment on the significance of concluding whether the guaranty was for one of payment or collection. In general terms, when a guarantor guarantees payment, he agrees that if the instrument is not paid when due he will pay it according to its terms and the person entitled to enforce the instrument need not resort to any other party. That is, the guarantor is primarily liable on the instrument. When a guarantor guaranteescollection, he agrees that if the instrument is not paid when due he will pay it according to its terms, but only after the person entitled to enforce the instrument has attempted unsuccessfully to recover from the maker or acceptor. That is, the guarantor is secondarily liable on the instrument.
I now turn to the consideration of the phrase "PERSONALLY GUARANTEED BY:." Synonyms for "unambiguously" include unmistakably, definitely, clearly, and unequivocally. At first glance, the words with which I am here concerned appear susceptible to at least more than one interpretation. Consequently, there is reasonable doubt as to whether the decedent was guaranteeing collection. An analysis of relevant case law supports this conclusion.
In Cusick v. Ifshin (1972), 334 N.Y.S.2d 106, the court considered whether the phrase "personally guarantee the obligation" meant that the guarantors were guaranteeing payment or collection. Id. at 108. The court concluded that the language of the guarantee was "clear and unambiguous in that, by its terms and as a matter of law, the two individuals were guarantors of payment and not collection." Id. at 109. In arriving at this conclusion, the court was applying former U.C.C. § 3-416, which in pertinent part is analogous to Ohio's R.C. § 1303.59.
Similarly, in Xerox Corp. v. ISC Corp. (1981), 632 P.2d 618, the Colorado Court of Appeals concluded that the phrase "Payment of the above promissory note in accordance with these terms is hereby personally guaranteed" prevented reasonable persons from concluding that the appellee therein had not personally guaranteed payment of the notes. Id. at 622-623 (Emphasis added).
In Cusimano v. First Maryland Savings Loan, Inc. (D.C.App. 1994), 639 A.2d 553, the court considered the impact of the following phrase:
 WE, the undersigned, do hereby personally guaranteed [sic] the due payment of the within indebtedness. Id. at 557 (emphasis added).
The Cusimano court held that the above language constituted a guarantee of payment. Id. In arriving at the conclusion, theCusimano court was applying a statute similar in essence to R.C. § 1303.59.
In sum, the strong policy of R.C. § 1303.59 construing ambiguous guarantees as guarantees of payment rather than collection certainly mandates the conclusion that the language of this guaranty obligates the decedent as a guarantor of payment. To bring the guaranty provision within the ambit of collection, decedent was required to use indicative terminology, such as the word "collection" or a similar word like "loss." See, Wolfe v.Schuster (1979), 591 S.W.2d 926, 930; Floor v. Melvin (1972),5 Ill. App.3d 463, 464-466, 283 N.E.2d 303, 304-305.
In light of the standard prescribed by statute and the instructive case law discussed above, I would hold that reasonable minds could not differ as to the conclusion that decedent signed as a guarantor of payment. I would hold the decedent signed the promissory note as a guarantor of payment and not collection. I would further hold, as there is no dispute concerning the propriety of how and when the claim was filed, Appellant-Plaintiff's motion for summary judgment should have been granted to the extent that Appellant presented a valid and enforceable guaranty of payment upon the estate of Derwin Curtis Sanford.